# **EXHIBIT 1**

*Kress v. Fulton Bank, N.A.*
### SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (hereinafter, "**Settlement**" or "**Agreement**") is made and entered into in the lawsuit *Kress v. Fulton Bank, N.A.*, No. 1:19-cv-18985-CDJ-JS (D.N.J.) (the "**Lawsuit**"), by and between Plaintiff Desiree Kress and opt-in plaintiff Moneta Stephens, on behalf of themselves, their agents, representatives, assignees, heirs, executors, beneficiaries, and trustees ("**Plaintiffs**"), and Defendant Fulton Bank, N.A. ("**Defendant**" or "**Fulton**"), on behalf of itself and the Released Parties (defined below), and is subject to the approval of the Court. Collectively, Plaintiffs and Defendant are referred to in the Agreement as the "**Parties**."

### RECITALS

WHEREAS, on October 15, 2019, Plaintiffs filed their Individual, Collective Action, and Class Action Civil Complaint ("**Complaint**") in the Lawsuit asserting a collective action for alleged violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("**FLSA**"), and a class action for alleged violations of the New Jersey Wage and Hour Law, N.J. Stat. Ann. § 34:11-56a, *et seq.* ("**NJWHL**"), New Jersey Wage Payment Law, N.J. Stat. Ann. § 34:11-4.1, *et seq.* ("**NJWPL**"), and the New Jersey common law of quantum meruit/unjust enrichment with respect to time spent on security procedures to open bank branches for business;

WHEREAS, Plaintiffs assert that their claims alleged in the Lawsuit are meritorious, and Defendant denies that it has committed any wrongdoing or violated any federal or state laws pertaining to payment of wages or hours worked, vigorously disputes the claims asserted in the Lawsuit, and asserts that it has strong defenses to the claims in the Lawsuit on which it would prevail if the Lawsuit continued to be litigated;

WHEREAS, in order to avoid the expense and burden of litigation, the Parties desire to resolve any and all causes of action, claims, or demands based on purported violations of the FLSA, NJWHL, NJWPL, and New Jersey common law, and any other state or local law (statutory, regulatory, and common law) pertaining to payment of wages and hours for bank branch opening and closing procedures;

WHEREAS, on March 4, 2020, the Parties jointly requested a settlement conference and that all proceedings be stayed in the interim to permit the Parties to focus on a potential early resolution;

WHEREAS, the Parties also agreed to an exchange of substantial documents, information, and data to inform their settlement discussions preceding a settlement conference;

WHEREAS, the Parties engaged in extensive arm's-length, comprehensive settlement negotiations, including settlement conferences with Magistrate Judge Joel Schneider on August 18, September 1, September 16, September 25, October 5, and October 13, 2020;

WHEREAS, the Parties' settlement conference sessions, as well as subsequent arm's-length negotiations eventually resulted in this definitive Agreement, which is subject to the Court's approval;

1

WHEREAS, contemporaneously with Plaintiffs' motion for preliminary approval of this Agreement and for settlement purposes only, Plaintiffs will seek certification of the Settlement Collective and Settlement Class defined in the Agreement;

NOW, THEREFORE, in consideration of the foregoing premises and the terms and conditions set forth herein, the Parties agree, subject to the Court's approval, as follows:

## DEFINITIONS

As used in the Agreement, the below terms have the following meanings. The below is not a complete list of all defined terms; additional defined terms appear in the Agreement's foregoing and subsequent paragraphs.

1.      "**Administrator**" means Epiq, the Settlement Administrator agreed upon by the Parties and appointed by the Court in its Preliminary Approval Order, who shall be responsible for providing notice and administering the Settlement.

2.      "**Claim Deadline**" means the later of forty-five (45) calendar days after the date the applicable Notice of Settlement and Claim Form are mailed by the Administrator, or thirty (30) calendar days after the date of re-mailing in the event that the initial mailing is returned as undeliverable for a particular Settlement Collective Member or Settlement Class Member.

3.      "**Check Opt-In Form**" means the language as specified in the Agreement that will appear on the back of every Settlement Payment check issued to a Settlement Collective Member who does not become a Claimant and is not a Settlement Class Member.

4.      "**Claim Form**" means the form that will be enclosed in the Mailing Packet with the Notices of Settlement in the form attached hereto as Exhibit "A."

5.      "**Claimant**" means a Settlement Collective Member or Settlement Class Member who completes, signs, and returns to the Administrator a valid and timely Claim Form by the Claim Deadline without altering the language of it (as detailed in Paragraph 84).

6.      "**Class Counsel**" means Swartz Swidler, LLC.

7.      "**Contingencies**" are defined in Paragraph 119.

8.      "**Court**" means the United States District Court for the District of New Jersey that is presiding over the Lawsuit.

9.      "**Covered Positions**" means the following hourly-paid positions, including those with a designation of senior, floating, or bilingual:  teller, teller supervisor/head teller, customer service representative, customer service representative supervisor, assistant branch manager, financial center supervisor, universal banker, or sales and service specialist.

10.      "**Defendant's Counsel**" means Seyfarth Shaw LLP.

2

11.     "**Effective Date**" means thirty-five (35) calendar days after the last of the following occurs: (a) if it is not appealed, the Court's Final Approval Order and judgment approving the Agreement is entered on the docket in the Lawsuit by the Court, (b) the Lawsuit is dismissed with prejudice and with all rights of appeal waived, or (c) any appeal of the Court's Final Approval Order and judgment is fully and finally resolved by affirming final approval of the Agreement in its entirety with no further right of appeal or review.

12.     "**Excluded Individuals**" are defined in Paragraph 57.

13.     "**Final Approval Hearing**" means the hearing held by the Court to consider the fairness, reasonableness, and adequacy of the Agreement, Class Counsel's motion for attorneys' fees and costs and service payments for Plaintiffs, and whether to enter a Final Approval Order.

14.     "**Final Approval Order**" means an order issued by the Court that grants final approval of the Settlement without change to any Material Term, grants final certification of the Settlement Collective and Settlement Class for settlement purposes only, authorizes payments to Settlement Participants, the Administrator, and Class Counsel, and fully and finally dismisses the Lawsuit with prejudice.

15.     "**Final Approval Papers**" are defined in Paragraph 114.

16.     "**Full-Time Employees**" means employees with that designation in Defendant's Human Resources system known as Ultipro.

17.     "**Initial Check Cashing Period**" is defined in Paragraph 107.

18.     "**Mailing Packet**" means collectively the Notice of Settlement and Claim Form that are sent to a Settlement Collective Member or Settlement Class Member. The Claim Form is attached as Exhibit "A." The Notices of Settlement are attached as Exhibits "B" and "C."

19.     "**Material Term**" is defined in Paragraph 120.

20.     "**Maximum Settlement Amount**" is defined in Paragraph 56.

21.     "**Minimum Payment**" is defined in Paragraph 61(a).

22.     "**Net Settlement Amount**" is defined in Paragraph 58.

23.     "**Notice(s) of Settlement**" means the form of Notice of Settlement of FLSA Collective and Class Action Lawsuit to be sent to Settlement Class Members, which is attached hereto as Exhibit "B," and/or the form of Notice of Settlement of FLSA Collective Action Lawsuit to be sent to those Settlement Collective Members who are not also Settlement Class Members, which is attached hereto as Exhibit "C."

24.     "**Participating Class Members**" means all members of the Settlement Class, except those who opt out of the Settlement by submitting a timely and valid Request for Exclusion to the Administrator pursuant to the process described herein. Participating Class

Members will be bound by the Agreement and will release all Released Claims, irrespective of whether they become a Claimant or cash a Settlement Payment or service payment.

25.     "**Per Workweek Amount**" is defined in Paragraph 63.

26.     "**Plaintiffs**" mean the named Plaintiff Desiree Kress and opt-in plaintiff Moneta Stephens, who filed a consent to join the Lawsuit as a party plaintiff under 29 U.S.C. § 216(b) on January 21, 2020, before execution of the Agreement.

27.     "**Preliminary Approval Date**" means the date of the Court's Preliminary Approval Order.

28.     "**Preliminary Approval Order**" means the Court's order granting preliminary approval of the Settlement, without change to any Material Term, and authorizing the distribution of the Mailing Packets.

29.     "**Preliminary Approval Papers**" are defined in Paragraph 111.

30.     "**Qualified Settlement Fund**" or "**QSF**" means a non-interest-bearing account meeting the requirements of 26 C.F.R. § 1.468B-1 that will be held by the Administrator at a bank selected by the Administrator as capable of working effectively with the Administrator to effectuate the Reverse Positive Pay Process. The money deposited into the QSF will be used to effectuate the terms of the Agreement and the orders of the Court in the Lawsuit and for no other purposes.

31.     "**Qualifying Workweeks**" are defined in Paragraph 62.

32.     "**Released Claims**" are defined in Paragraph 74.

33.     "**Released Parties**" means Defendant and each of its parents, divisions, subsidiaries, affiliates, sibling entities, investors, predecessors, and successors, and each of their current and former owners, stockholders, directors, officers, members, fiduciaries, insurers, employees, attorneys, representatives, and agents.

34.     "**Request for Exclusion**" means the written statement, as specified in Paragraph 86 of the Agreement, through which a Settlement Class Member may request exclusion ("opt out") from the Settlement Class.

35.     "**Reserve Amount**" is defined in Paragraph 57.

36.     "**Residual Net Settlement Amount**" is defined in Paragraph 59.

37.     "**Reverse Positive Pay Process**" means the process by which the Administrator will review each Settlement Payment check that contains the Check Opt-In Form on its back to both (a) confirm that the Check Opt-In Form has not been altered, that the check has been signed, and that the check has not been cashed or otherwise negotiated previously; and (b) direct the bank holding the QSF to reject payment of any check reviewed that shows alterations to the

Check Opt-In Form language, that is not signed, or that previously has been cashed or otherwise negotiated.

38.     "**Second Check Cashing Period**" is defined in Paragraph 108.

39.     "**Settlement Class**" means all current and former Full-Time Employees who have worked for Fulton Bank, N.A. in New Jersey, or Fulton Bank of New Jersey, at any time from August 9, 2017 through September 1, 2020 (the "**Relevant Period**") in a retail banking branch in one or more Covered Positions.

40.     "**Settlement Class Member**" means an individual member of the Settlement Class.

41.     "**Settlement Collective**" means all current and former -Full-Time Employees who have worked for Fulton Bank, N.A., or any bank which merged into Fulton Bank, N.A., at any time during the Relevant Period in a retail banking branch in one or more Covered Positions.

42.     "**Settlement Collective List" and "Settlement Class List**" are defined in Paragraph 75.

43.     "**Settlement Collective Member**" means an individual member of the Settlement Collective.

44.     "**Settlement Participants**" refers collectively to Plaintiffs, Settlement Collective Members, and Participating Class Members.

45.     "**Settlement Payment**" means the amount that any Settlement Participant, whether a Claimant or non-Claimant, receives. It also includes any payment that an Excluded Individual receives as a result of a successful dispute pursuant to the dispute process set forth in the Agreement.

46.     "**Settlement Website**" means the website regarding this Settlement that will be established by the Administrator within ten (10) business days after the Preliminary Approval Date. The domain name of the Settlement Website will be approved by the Parties. The Settlement Website will include .pdf copies of the Agreement (along with the Notices of Settlement and Claim Form), the Preliminary Approval Order, the Final Approval Order (once entered), the Complaint, and any other case documents and/or information relevant to the Settlement to the extent such additional documents and/or information are agreed upon by the Parties in advance of posting on the Settlement Website. The Settlement Website will be owned and operated by the Administrator, and only the Administrator may add postings to the Settlement Website. Claim Forms may be submitted by Settlement Collective Members and Settlement Class Members to the Administrator via the Settlement Website in a secure and private fashion using Share File or a suitable alternative that requires the submission of a unique identifying claim number for each individual Settlement Collective Member or Settlement Class Member and verification of that person's identity through the submission of the last four digits of the person's Social Security number to guard against fraud. Each Settlement Collective Member and Settlement Class Member will receive his or her unique identifying claim number as part of the Notice of Settlement and Claim Form.

47.     "**Skip Tracing**" means the process by which the Administrator will work with a credit reporting agency (such as TransUnion, Experian, or Equifax) and, if the Administrator deems it necessary, with other publicly available databases and sources, to conduct automated batch processing of the mailing addresses for individuals whose Mailing Packet is returned to the Administrator as undeliverable.

48.     As used in the Agreement, the plural form of any definition above or elsewhere includes the singular, and the singular form of any definition includes the plural.

## NO ADMISSION OF LIABILITY

49.     Fulton denies that it violated the law in any manner, specifically denies that it violated any statutory, regulatory, or common law alleged or that could have been alleged in the Lawsuit, and asserts that it has strong and meritorious defenses to all claims that were brought or could have been brought in the Lawsuit. The Parties have entered into the Agreement with the intention to avoid further disputes and litigation settled herein with the attendant inconvenience, expenses, and uncertainties.

50.     The Parties agree that nothing contained in the Agreement, including the consummation of the Agreement, is to be construed or deemed an admission of liability, culpability, negligence, or wrongdoing on the part of the Released Parties. The Agreement is a settlement document and will, pursuant to Federal Rule of Evidence 408, be inadmissible in evidence in any lawsuit or proceeding for any purpose, except an action or proceeding to approve, interpret, or enforce the Agreement.

## EFFECT OF STIPULATIONS

51.     Pursuant to the Agreement and for settlement purposes only, the Parties provisionally stipulate to the certification of the Settlement Collective under 29 U.S.C. § 216(b) and the certification of the Settlement Class under Fed. R. Civ. P. 23(a) and (b)(3).

52.     The Parties' stipulation to the certification of the Settlement Collective and Settlement Class is for settlement purposes only and does not constitute in the Lawsuit or any other proceeding an admission of any kind by Fulton, including, without limitation, that certification of a collective or class for purposes of litigation would be appropriate or proper or that Plaintiffs could establish any of the requisite elements for collective or class certification of any of the claims settled herein.

53.     Fulton does not waive and expressly reserves its right to challenge the propriety of collective and class certification for any purpose should the Effective Date not occur for any reason, in which case Fulton's willingness provisionally to stipulate to certification as part of the Agreement will have no bearing on, and will not be admissible in connection with, any issue in the Lawsuit or in any other or subsequent lawsuit or proceeding. Plaintiffs and Class Counsel agree not to offer or make reference to this provisional stipulation to collective or class certification for settlement purposes only in any subsequent proceeding in the Lawsuit (except for purposes of having the Agreement approved and enforced by the Court) or in any other lawsuit or proceeding.

54.     The Parties agree to request that, except as necessary to approve and effectuate the Settlement, the Preliminary Approval Order should stay all further proceedings in the Lawsuit, including Fulton's deadline for filing a responsive pleading to the Complaint. If the Court enters a Final Approval Order, Fulton's response to the Complaint will be excused through dismissal of the Lawsuit.

55.     If the Effective Date does not occur for any reason, no opt-in forms (whether through Claim Forms, Check Opt-In Forms, or otherwise) related to the Settlement will be filed, the Parties will be returned to the positions they held on March 5, 2020, when the Court stayed all proceedings for purposes of settlement discussions, and Fulton will have a deadline of thirty (30) days from the lifting of the stay to respond to the Complaint. Fulton's prior willingness to allow the submission of opt-in forms will have no bearing on, and will not be admissible in, the Lawsuit or any subsequent proceeding.

## SETTLEMENT AMOUNT

56.     In consideration for the terms and conditions of the Agreement, including the Release set forth in Paragraph 74 below, Fulton agrees to deposit into the QSF the amount of One Million Dollars ($1,000,000.00), which amount is referred to herein as the "**Maximum Settlement Amount**." The Maximum Settlement Amount is inclusive of all Class Counsel's fees and costs incurred in the Lawsuit and its settlement; all settlement administration fees and expenses; all Settlement Participants' back wages and interest on back wages; liquidated, punitive, and multiple damages; service payments; and all Settlement Participants' share of payroll taxes on their Settlement Payments and service payments. Other than the employer's share of payroll taxes on the service payments and on the portion of the Settlement Payments that are treated as wages, Defendant shall not be responsible for: (a) any taxes imposed by law or a taxing authority on any Settlement Participant or Class Counsel, (b) any penalties that may later be assessed by a taxing authority on any Settlement Participant or Class Counsel, or (c) any other sums in excess of the Maximum Settlement Amount.

57.     The Administrator shall set aside and not pay out of the QSF Twenty-Thousand Dollars ($20,000.00) of the Maximum Settlement Amount (the "**Reserve Amount**") to cover any correctible errors or omissions in determining the settlement amounts to be paid to Settlement Participants or to individuals who were not, but later correctly assert that they should have been, included in the Settlement Collective or Settlement Class ("**Excluded Individuals**").

58.     The Maximum Settlement Amount less all of the following will be the "**Net Settlement Amount**": (a) all fees and costs of the Administrator for settlement administration as finally approved by the Court; (b) Class Counsel's fees and costs as finally approved by the Court; (c) service payments; and (d) the Reserve Amount. The Settlement Payments to Settlement Participants will be paid out of the Net Settlement Amount.

59.     The "**Residual Net Settlement Amount**" will be the Net Settlement Amount minus the total sum of Minimum Payments to all Settlement Participants.

60.     Except as set forth in Paragraph 56 above with respect to employer-side payroll taxes, Fulton shall have no obligation to pay or provide any further consideration to any Plaintiff,

Settlement Collective Member, or Settlement Class Member by reason of the Agreement or because of the foregoing payments, including but not limited to contributions to any 401(k) or other retirement or employee benefit plan, vacation or sick pay, or similar benefits based on or as a result of the Agreement. Any payments made pursuant to the Agreement will not trigger any obligation of Fulton to make any withholding for 401(k) contributions or to make any contributions to any 401(k) or similar plan.

## SETTLEMENT FORMULA AND ALLOCATION

61.     Subject to the conditions of the Agreement, the Administrator shall issue a Settlement Payment to each Settlement Participant from the Net Settlement Amount in the QSF for a gross, pre-tax amount that is calculated as follows:

(a)     the flat sum of One Hundred Twenty-Five Dollars ($125.00) (the "**Minimum Payment**"), plus

(b)     the Settlement Participant's *pro rata* share of the Residual Net Settlement Amount, which will be determined by multiplying the Settlement Participant's number of Qualifying Workweeks by the Per Workweek Amount.

62.     The Administrator will determine the "**Qualifying Workweeks**" for each Settlement Participant by counting all full and partial workweeks during the Relevant Period in which any amount of actual worktime is reflected in Fulton's time system of record for the Settlement Participant as a Full-Time Employee in a Covered Position. Paid time off and leaves of absence do not count as worktime. The number of Qualifying Workweeks will be determined by reference to Fulton's time records and Human Resources records in its system known as UltiPro.

63.     The Administrator will determine the "**Per Workweek Amount**" by dividing the Residual Net Settlement Amount by the sum of the total number of Qualifying Workweeks for all Settlement Participants.

64.     Any individual who has zero Qualifying Workweeks as a Full-Time Employee during the Relevant Period in a Covered Position shall not receive a Settlement Payment because such an individual does meet one of the requirements for membership in the Settlement Collective or Settlement Class, which is work for Fulton during the Relevant Period.  Thus, any individual who has zero Qualifying Workweeks as a Full-Time Employee in a Covered Position during the Relevant Period is not a member of the Settlement Class, is not a member of the Settlement Collective, will not receive a Notice of Settlement and Claim Form or a Settlement Payment, and will likewise not be bound to this Agreement or any judgments and rulings in the Lawsuit.

## TAX TREATMENT OF SETTLEMENT PAYMENTS

65.     One-half (1/2) of each Settlement Payment will be considered wages subject to the withholding of all applicable local, state, and federal taxes. The Administrator shall make the required withholdings and shall issue an IRS Form W-2 to each recipient of a Settlement Payment for this wage portion of the Settlement Payment.

66. The other one-half (1/2) of each Settlement Payment will be considered non-wages for the settlement of interest claims, liquidated and/or multiple damages, and any statutory or civil penalties available under any applicable local, state, and federal laws. The Administrator shall issue an IRS Form 1099 to Settlement Participants for this non-wage portion of the Settlement Payment if necessary in accordance with IRS requirements.

67. Any Court-approved service payments will be considered wages subject to the withholding of all applicable local, state, and federal taxes. The Administrator shall make the required withholdings and shall issue an IRS Form W-2 to Plaintiffs for any Court-approved service payments if necessary in accordance with IRS requirements.

68. Each Settlement Participant is solely responsible for correctly characterizing his or her Settlement Payment for tax purposes and paying any taxes due. Fulton shall have no liability to any tax authorities for the tax treatment of the Settlement Payments or service payments as set forth in the Agreement.

## CLASS COUNSEL'S FEES AND COSTS AND PLAINTIFFS' SERVICE PAYMENTS

69. Class Counsel shall seek court approval of their attorneys' fees and costs, and Fulton reserves the right to review, and propose comments on, any motion filed by Class Counsel or Plaintiffs requesting approval of Class Counsel's fees and costs. Subject to the approval of the Court, Class Counsel shall request: (a) attorneys' fees in an amount not to exceed Three Hundred Thirty-Three Thousand Three Hundred Thirty-Three Dollars and Thirty-Three Cents ($333,333.33); plus (b) reimbursement of their out-of-pocket costs in an amount not to exceed Six Hundred Dollars and No Cents ($600.00). The attorneys' fees and costs awarded by the Court will compensate Class Counsel for all work performed and all costs incurred in or related to the Lawsuit from its inception to its conclusion, including all future work in connection with the implementation of the Agreement, seeking approval of the Agreement by the Court, responding to any objections to and appeals of the Court's orders or judgments, overseeing the administration of the Settlement in conjunction with Defendant's Counsel, and filing all documents necessary to fulfill all terms and conditions of the Agreement, including those that occur after the Effective Date. The Court-approved attorneys' fees and costs will be paid out of the Maximum Settlement Amount. Fulton is not responsible for any attorneys' fees and costs of Class Counsel beyond that amount approved by the Court to be paid out of the Maximum Settlement Amount.

70. Further, Class Counsel shall seek court approval of service payments for Plaintiffs, and Fulton reserves the right to review, and propose comments on, any motion filed by Class Counsel or Plaintiffs requesting approval of the service payments. Subject to the approval of the Court, Class Counsel shall request: (a) a service payment in an amount not to exceed Five Thousand Dollars ($5,000.00) for Plaintiff Desiree Kress; and (b) a service payment in an amount not to exceed Five Hundred Dollars ($500.00) for opt-in Plaintiff Moneta Stephens. The service payments awarded by the Court will compensate Plaintiffs for their service to the class through their assistance to Class Counsel in bringing the case, and investigating and prosecuting the claims. The Court-approved service payments will be paid out of the Maximum Settlement Amount. Fulton is not responsible for any service payments to Plaintiffs beyond those amounts approved by the Court to be paid out of the Maximum Settlement Amount.

9

71.     A condition precedent to the Administrator's payment to Class Counsel of the court-approved attorneys' fees and costs will be the Administrator's receipt of a completed and executed IRS Form W-9 from Class Counsel. The Administrator shall report the amount paid on an IRS Form 1099 issued to Class Counsel.

## SETTLEMENT PAYMENT SCHEDULE

72.     Fulton shall wire the Maximum Settlement Amount to the QSF on the first business day following the Effective Date.

73.     The Administrator shall make all payments to Settlement Participants, including the Court-approved service payments to Plaintiffs, and the Court-approved payment to Class Counsel as described in the preceding paragraphs no later than thirty (30) days after the Effective Date.

## RELEASED CLAIMS

74.     In further consideration of the promises made in the Agreement, and upon the Effective Date and the payment by Fulton of the Maximum Settlement Amount into the QSF, Plaintiffs, all Participating Class Members, and any other Settlement Participants who become Claimants or cash or otherwise negotiate a settlement check hereby forever fully and finally release and discharge the Released Parties from any and all claims, charges, complaints, actions, causes of action, lawsuits, grievances, controversies, disputes, demands, agreements, contracts, covenants, promises, liabilities, judgments, obligations, debts, damages (including, but not limited to, actual, compensatory, punitive, and liquidated damages), attorneys' fees, costs, and/or any other liabilities of any kind, nature, description or character whatsoever that were or could have been asserted in the Lawsuit with respect to payment for their performance of bank branch opening and/or closing procedures from the beginning of the Relevant Period through the Effective Date of the Agreement, whether known or unknown, suspected or concealed, and whether presently asserted or otherwise, including without limitation any claims under the FLSA, NJWHL, NJWPL, New Jersey common law of quantum meruit/unjust enrichment, and any other applicable state, county, or local laws, statutes, regulations, ordinances, wage orders, public policies, or common laws.  This release is intended to cover all claims for wages or other compensation alleged to be due for tasks performed by Plaintiffs, Participating Class Members, or Settlement Participants in completing branch opening and closing procedures.  Though all legal claims for such work are intended to be released, whether under federal, state, local, or common law, the release is intended only to release claims upon which the factual predicate giving rise to such relief is alleged non-payment for performance of branch opening and closing procedures. Also released are all claims for contributions to any 401(k) or other retirement or employee benefit plan based on Settlement Payments or service payments made by reason of the Agreement (collectively, the "**Released Claims**").

## ADMINISTRATION OF THE SETTLEMENT

75.     Within twenty-one (21) calendar days after the Preliminary Approval Date, Fulton, through Defendant's Counsel, shall provide to the Administrator separate lists, in electronic format, of potential Settlement Collective Members (the "**Settlement Collective**

List") and potential Settlement Class Members (the "**Settlement Class List**"). Any person who is a potential member of both the Settlement Collective and the Settlement Class will appear in the Settlement Class List and not the Settlement Collective List to ensure they receive the correct Notice of Settlement, which is the Notice of Settlement of FLSA Collective and Class Action Lawsuit, Exhibit "B." Plaintiffs will be included in the Settlement Class List. Both the Settlement Collective List and the Settlement Class List will include for each person the following information: (a) name; (b) employee ID assigned by Fulton for purposes of time and HR records; (c) last known mailing address; (d) dates of employment Full-Time in each Covered Position during the Relevant Period; (e) the number of Qualifying Workweeks based on Fulton's time records, which may be less than the number of weeks covered by the overall dates of employment in Full-Time, Covered Positions because of weeks of paid time off and leaves of absence in which no worktime was recorded and which, for some individuals, could be zero Qualifying Workweeks; and (f) Social Security number. Defendant's Counsel shall provide to Class Counsel a redacted version of the Settlement Collective List, which does not include items (a), (c), or (f),  and a redacted version of the Settlement Class List, which does not include item (f), provided that Class Counsel agrees to and the Court approves the Parties' proposed Stipulated Confidentiality Order. The Parties' Stipulated Confidentiality Order will, among other provisions, require, restrict, and prohibit all of the following: (a) prohibit Class Counsel from contacting any potential Settlement Collective Members or potential Settlement Class Members for any reason other than providing legal advice about Settlement of the Lawsuit, given that they all should be notified of the Settlement through the Court-approved notice process by the Administrator, if the Administrator determines they have more than zero Qualifying Workweeks; (b) restrict Class Counsel's use of the Settlement Class List and Settlement Collective List to representation for purposes of the Settlement of the Lawsuit only of the Participating Class Members and those Settlement Collective Members who submit Claim Forms or Check Opt-In Forms; (c) prohibit Class Counsel from disclosing the Settlement Class List or Settlement Collective List to anyone for any purpose; and (d) allow Class Counsel to retain the Settlement Class List and Settlement Collective List solely for the purpose of identifying the Settlement Class Members and Settlement Collective Members who became clients of Class Counsel for the purpose of the Settlement of the Lawsuit. Defendant's Counsel will provide the redacted versions of the Settlement Collective List and Settlement Class List to Class Counsel on the same day that the Settlement Collective List and Settlement Class List are provided to the Administrator if the Parties' Stipulated Confidentiality Order has been entered by the Court before that date. If the Court has not entered the Parties' Stipulated Confidentiality Order before Defendant's deadline for providing the Settlement Collective List and Settlement Class List to the Administrator, Defendant's Counsel will provide the redacted versions of the Settlement Collective List and Settlement Class List to Class Counsel no later than seven (7) calendar days after the Court enters the Parties' Stipulated Confidentiality Order. The Settlement Collective List and Settlement Class List and all information in them will be strictly confidential except as described above. The Administrator shall provide Defendant's Counsel with a secure and encrypted manner for transmitting the information confidentially and shall not provide its version of the Settlement Collective List or Settlement Class List to Class Counsel, given the Parties' agreement to Defendant separately providing to Class Counsel the above-described redacted versions of the Settlement Collective List and the Settlement Class List once the aforementioned conditions for doing so have been met.

76.     The Administrator's duties will include the following tasks, as well as all other tasks assigned to the Administrator in the Agreement or by the Court and consistent with usual practices:

(a)     Calculating the Qualifying Workweeks to be included on each Settlement Collective Member's and Settlement Class Member's unique Claim Form and excluding from the list to receive a Mailing Packet those individuals on the Settlement Collective List or Settlement Class List with zero Qualifying Workweeks;

(b)     Running the entire Settlement Collective List and Settlement Class List through the U.S. Post Office's National Change of Address database to ascertain any updated mailing addresses prior to the initial mailing of the Mailing Packets;

(c)     Conducting Skip Tracing on any Mailing Packets that are part of the initial mailing and are returned as undeliverable, and re-mailing them to any new addresses discovered within five (5) business days;

(d)     Preparing, printing, and mailing the Mailing Packets to Settlement Collective Members and Settlement Class Members within sixty (60) days after the Preliminary Approval Date;

(e)     Receiving, cataloging, and preserving completed Claim Forms, Requests for Exclusion, and objections to the Settlement;

(f)     Establishing and staffing a toll free telephone number that will permit Settlement Collective Members and Settlement Class Members to request and obtain a copy of the Agreement and the appropriate Notice of Settlement and Claim Form;

(g)     Establishing and maintaining the Settlement Website;

(h)     Handling and resolving (and involving counsel for the Parties as necessary in resolving) disputes made by Claimants regarding their Qualifying Workweeks or by any Excluded Individuals regarding their alleged right to be included in the Settlement Collective and/or Settlement Class;

(i)     Providing counsel for the Parties with weekly status reports containing the number of Mailing Packets mailed; the number of Mailing Packets returned as undeliverable and re-mailed; the number of disputes asserted by Excluded Individuals; the number of timely and valid Check Opt-In Forms, Claim Forms, Requests for Exclusion, and objections to the Settlement received; and the number of untimely and invalid Check Opt-In Forms, Claim Forms, Requests for Exclusion, and objections to the Settlement received;

(j)     Providing counsel for the Parties with copies of all Claim Forms and objections received, and redacted copies of any Requests for Exclusion received, on a weekly basis;

(k)     Providing counsel for the Parties, in advance of the Final Approval Hearing, an accounting of the anticipated Settlement Payments to be made and the Per Workweek Amount to be used in calculating the Settlement Payments to be made;

(l)     Establishing the QSF pursuant to the Preliminary Approval Order before Fulton provides any monies to the Administrator pursuant to the Agreement;

(m)     After the Final Approval Order, calculating the Settlement Payments to be made to Plaintiffs and each Settlement Collective Member and Participating Class Member;

(n)     Mailing all Settlement Payments and Court-approved service payments and reminders as provided for in the Agreement and approved by the Court;

(o)     Performing the Reverse Positive Pay Process on all settlement checks with Check Opt-In Form language quickly enough to ensure that any directives by the Administrator to the bank to stop payment on a check are honored and effective in denying Settlement Payments when necessary;

(p)     Receiving, cataloging, and preserving completed Check Opt-In Forms;

(q)     Notifying any Settlement Collective Member whose Settlement Payment check was rejected for payment under the Reverse Positive Pay Process of the reason for rejection and the manner and time period for reissuance and proper negotiation of a new Settlement Payment check;

(r)     Providing counsel for the Parties with electronic copies of the Check Opt-In Forms as executed by Settlement Participants within fourteen (14) calendar days after receipt of each executed Check Opt-In Form;

(s)     Administering and otherwise operating the QSF, including remitting all amounts to be paid from the QSF as set forth in the Agreement, preparing and filing federal, state, and local tax returns with applicable government taxing authorities, and issuing the tax reports and tax forms required under the Agreement or by law to Settlement Participants (along with the Exhibit "G" cover communication), to Class Counsel, to the charitable organization chosen by the Parties (*cy pres*), if applicable, and to Fulton, if applicable;

(t)     Issuing any stop payments on Settlement Payment checks lost by a recipient and reissuing such Settlement Payment checks if re-issuance is requested within the deadline for doing so as set forth in the Agreement;

(u)     Pursuing tax refunds on any uncashed Settlement Payment checks and remitting such refunds to the QSF;

(v)     Providing counsel for the Parties with declarations under oath required by the Agreement or requested by Class Counsel (with advance notice to or copying of Defendant's Counsel) or by Defendant's Counsel (with advance notice to or copying of Class Counsel) at any time regarding any issue relating to the administration of the Settlement;

(w)     Providing counsel for the Parties with a declaration that will be filed with the motion for preliminary approval of the Settlement that provides a detailed estimate for performing all tasks and duties described in the Agreement;

(x)     Providing counsel for the Parties with a declaration that will be filed with the motion for final approval of the settlement that sets forth a "not to exceed" cost for performing all tasks and duties described in the Agreement, along with the reason for any change from the estimate previously provided in the preliminary approval motion; and

(y)     Otherwise administering the Settlement pursuant to the Agreement and any Court-required or approved modifications, and consistent with usual practices.

77.     No later than ten (10) calendar days after Class Counsel files with the Court the motion for preliminary approval of the Settlement, the Administrator shall mail notices of the Settlement to an "appropriate Federal official" and "appropriate State officials" as required by 28 U.S.C. § 1715. The Administrator, with Fulton's assistance to the extent the Administrator so requests, shall prepare these notices, which will include as exhibits the preliminary approval motion with all exhibits, the Agreement with all of its exhibits, the Complaint, notice of scheduled judicial hearings (if any are known), and any other information required by 28 U.S.C. § 1715(b) that is known at the time that the notices are mailed.

78.     All fees and costs of the Administrator will be paid out of the QSF from the Maximum Settlement Amount. In no event will the Parties or counsel for the Parties be responsible for any additional fees and costs of the Administrator. Any disputes that cannot be resolved by the Parties relating to the Administrator's ability and need to perform its duties or the fees and costs for its performance of the duties will be referred to the Court, which will have continuing jurisdiction over the implementation of the Agreement. The Administrator shall submit to the jurisdiction of the Court in connection with its appointment as Administrator.

## MAILING PACKETS AND SUBMISSION OF CLAIM FORMS

79.     Within thirty (30) calendar days after receiving the Settlement Collective List and Settlement Class List, the Administrator shall send the Mailing Packets by first class mail to each individual on those lists  who has more than zero Qualifying Workweeks.

80.     If a Mailing Packet has not been returned to the Administrator as undeliverable within thirty (30) calendar days following the mailing, it will be presumed to have been received by the intended recipient.

81.     If a Mailing Packet is returned and re-mailed and the re-mailing is returned again to the Administrator, the Mailing Packet will be deemed undeliverable, and neither the Administrator nor Fulton shall have any further obligation to attempt to deliver the Mailing Packet.

82.     The Claim Form in each Mailing Packing will include the Settlement Collective Member's or Settlement Class Member's unique identifying claim number and number of Qualifying Workweeks.

83.     The Claim Form also will contain language similar to that of the Check Opt-In Form and will constitute a consent to join the Lawsuit pursuant to Section 16(b) of the FLSA for settlement purposes only. The Notices of Settlement will explain that by becoming a Claimant, the Settlement Collective Member or Settlement Class Member: (a) will be electing to opt in to the Settlement; (b) will be authorizing Class Counsel to file with the Court evidence of his or her consent to join the Settlement of the Lawsuit as a party plaintiff and, unless excused by the Court, a redacted copy of the Claim Form; (c) will be asserting a claim under the FLSA and any applicable state and/or local laws for all wages, including overtime, that allegedly have not been paid for branch opening procedures; and (d) will be releasing and agreeing not to sue for any of the Released Claims. The Notices of Settlement also will explain that anyone who consents to join the Lawsuit after the Preliminary Approval Date understands that his or her consent to join will be deemed to have been withdrawn and will be stricken by the Court and of no effect in the event that the Effective Date does not occur for any reason.

84.     To be deemed timely, a Claim Form must be returned to the Administrator and must bear a postmark of, timestamp of, or be marked as received by the Administrator, on or before the Claim Deadline. To be deemed valid, the Claim Form must be timely, complete, and signed by the Settlement Collective Member or Settlement Class Member, and the consent to join and release language on the Claim Form must not be altered in any way. Plaintiffs do not need to submit a Claim Form in order to be Claimants, and they agree that they will not revoke the consents to join the Lawsuit, which they filed pursuant to 29 U.S.C. § 216(b).

## REQUESTS FOR EXCLUSION

85.     Pursuant to Fed. R. Civ. P. 23(c)(2)(B)(v), the Notice of Settlement that is sent to Settlement Class Members will explain that a Settlement Class Member may submit a Request for Exclusion from (i.e., "opt out" of) the Settlement, in which case he or she cannot object to the Settlement, cannot be a Participating Class Member, and is not eligible for a Settlement Payment.

86.     To be deemed timely, a Request for Exclusion must be returned to the Administrator and must bear a postmark of, timestamp of, or be marked as received by the Administrator, on or before the Claim Deadline. To be deemed valid, a Request for Exclusion must be timely and contain all of the following: (a) a clear statement of the Settlement Class Member's desire to be excluded from the Settlement Class; (b) the Settlement Class Member's printed full name, mailing address, and the last four digits of his or her Social Security number; and (c) the actual written signature of the Settlement Class Member seeking to exclude himself or herself. Requests for Exclusion cannot be made on behalf of a group or class. Plaintiffs agree to waive their right to opt out of the Settlement Class.

87.     Any personal identifiers (such as the Social Security number) and any contact information must be redacted prior to filing any timely and valid Requests for Exclusion on the public docket. The Administrator shall provide redacted copies of each Request for Exclusion received to counsel for the Parties on a weekly basis. The Administrator may share with Class Counsel the redacted contact information for one or more Requests for Exclusion only upon agreement of the Parties.

88.     Any Settlement Class Member who does not submit a timely and valid Request for Exclusion to the Administrator shall be bound by the terms of the Agreement and its Released Claims as approved by the Court, even if he or she files an objection to the Settlement.

89.     No Settlement Class Member shall be permitted to pursue a Released Claim on the grounds that a Request for Exclusion was submitted timely but lost, destroyed, misplaced, or otherwise not received by the Administrator unless the Settlement Class Member (a) has adequate proof that the Request for Exclusion was mailed timely by certified mail return receipt requested, or has equivalent proof of timely delivery, and (b) shows that the Request for Exclusion met the requirements to be deemed valid as set forth in the preceding paragraphs.

## OBJECTIONS

90.     Settlement Class Members who do not submit a timely and valid Request for Exclusion are Participating Class Members and thus may submit a timely and valid written objection to the Settlement.  Individuals who are members of the Settlement Collective exclusively are not subject to Rule 23(e) and have no right to object to the Settlement.

91.     To be deemed timely, a Participating Class Member who wishes to object to the Settlement must submit a written objection to the Administrator which must bear a postmark of, timestamp of, or be marked as received by the Administrator, on or before the Claim Deadline. The Administrator shall provide copies of any objection to counsel for the Parties on a weekly basis. To be deemed valid, the written objection must be timely and contain all of the following: (a) a statement of each objection, the specific reasons for it, and any evidentiary and factual support for each objection that the Participating Class Member wishes to bring to the Court's attention; (b) a statement as to whether the Participating Class Member or his or her attorney (other than Class Counsel) intends to appear at the Final Approval Hearing; (c) the Participating Class Member's printed full name, mailing address, Covered Position(s) held, dates of employment at Fulton in Covered Positions as a Full-Time Employee, and the last four digits of his or her Social Security number, and (d) the actual written signature of the Participating Class Member making the objection.

92.     All attorneys who are involved in any way in asserting objections on behalf of a Participating Class Member must file a notice of appearance with the Court contemporaneously with the submission to the Administrator of the objection.

93.     Class Counsel, Defendant's Counsel, or both may seek Court approval to take discovery from any objector prior to the Final Approval Hearing to better understand the basis for objection..

94.     If the Court rejects the Participating Class Member's objection, the Participating Class Member shall still be bound by the terms of the Agreement, including the Released Claims.

## OPTING INTO THE SETTLEMENT

95.     Settlement Participants may opt into the Lawsuit for purposes of the Settlement only by submitting a timely and valid Claim Form, as discussed in Paragraph 84.

96.     Settlement Collective Members who do not become Claimants may instead opt into the Settlement by signing and cashing or otherwise negotiating their Settlement Payment check, which will include on the back of the check, the following printed Check Opt-In Form language:

> VOID IF ALTERED OR NOT CASHED BEFORE [DATE]
> POSITIVE I.D. IS REQUIRED
> SIGNED ENDORSEMENT BY NAMED PAYEE IS REQUIRED
>
> I dispute that I have received all wages I am owed and thus consent to join the lawsuit *Kress v. Fulton Bank, N.A.*, No. 1:19-cv-18985 (D.N.J.). By signing below, I authorize Class Counsel, on my behalf, to file evidence of my consent with the Court, and I agree to release and not to sue for the Released Claims defined in the Notice of Settlement I received.
>
> Endorsed: _____
> [PAYEE'S NAME PRINTED BY ADMINISTRATOR]

97.     The Check Opt-In Form language will appear on the backs of the checks of Settlement Collective Members who are not also Settlement Class Members and who do not become Claimants. Checks issued to Plaintiffs, Claimants, and Participating Class Members will not include Check Opt-In Form language because Claimants and Participating Class Members are releasing all Released Claims, including those under the FLSA, by virtue of their status as a Plaintiff, Claimant and/or Participating Class Member, irrespective of whether they cash their Settlement Payment or service payment check.

98.     Any Settlement Collective Member who does not alter the above language of the Check Opt-In Form and cashes or otherwise negotiates it shall be deemed an opt-in party plaintiff under Section 16(b) of the FLSA for purposes of the Settlement only.

99.     The Notices of Settlement will explain that by negotiating or cashing the Settlement Payment check with the Check Opt-In Form language, the Settlement Collective Member: (a) will be electing to opt in to the Settlement; (b) will be authorizing Class Counsel to file with the Court evidence of his or her consent to join the Settlement of the Lawsuit as a party plaintiff and, unless excused by the Court, a copy of the Check Opt-In Form; (c) will be asserting a claim under the FLSA and any applicable state and/or local laws for all wages, including overtime, that allegedly have not been paid for branch opening procedures; and (d) will be releasing and agreeing not to sue for any of the Released Claims. The Notices of Settlement also will explain that anyone who consents to join the Lawsuit after the Preliminary Approval Date understands that his or her consent to join will be deemed to have been withdrawn and will be stricken by the Court and of no effect in the event that the Effective Date does not occur for any reason.

100.    Class Counsel shall cause to be filed, and shall serve on Defendant's Counsel proof of filing, evidence sufficient to meet the consent filing requirements of the FLSA, 29 U.S.C. § 216(b). This evidence will be provided by the Administrator to counsel for the Parties, and proof of its filing served on Defendant's Counsel, no later than fourteen (14) calendar days

after the Second Check Cashing Period but in no event earlier than the Effective Date. The evidence will be in the form of a list of all individuals who meet the consent filing requirements, accompanied by each Settlement Participant's Check Opt-In Form or Claim Form, with appropriate redactions of Social Security numbers, mailing addresses, and all other contact information. Provided, however, that Class Counsel shall be relieved of the requirement to file Check Opt-In Forms and redacted Claim Forms if upon motion by Class Counsel as part of the motion for preliminary approval and/or motion for final approval, the Court expressly orders in the Preliminary Approval Order or Final Approval Order that Class Counsel may comply with the consent filing requirements of 29 U.S.C. § 216(b) by filing, and serving on Defendant's Counsel proof of filing, a declaration from the Administrator attaching a complete list of the names, with a corresponding unique identification number generated by the Administrator, for all Claimants and Settlement Collective Members who cash or negotiate a Settlement Payment check with the Check Opt-In Form language.

## HANDLING OF DISPUTES

101.    A Settlement Participant or an Excluded Individual may raise a dispute about their number of Qualifying Workweeks during the Relevant Period as a Full-Time Employee in a Covered Position. The Administrator shall be responsible for working with counsel for the Parties to handle such disputes pursuant to the Agreement and the Court's orders.

102.    If a Settlement Participant or an Excluded Individual wishes to raise a dispute, he or she must present to the Administrator paycheck stubs conclusively establishing a different number of Qualifying Workweeks during the Relevant Period as a Full-Time Employee in a Covered Position.

103.    To be valid, the dispute must be submitted to the Administrator in writing, must state the specific nature and basis of the dispute, and must include copies of the paycheck stubs that support the dispute. To be timely, the dispute must be received by the Administrator no later than twenty-one (21) days before the Final Approval Hearing. Untimely or otherwise invalid disputes will be deemed irrevocably waived by the disputer.

104.    Upon receipt of a valid dispute and provided that the Reserve Amount has not been exhausted, the Administrator shall be responsible for handling and resolving the dispute pursuant to the following rules and shall notify counsel for the Parties promptly and no later than five (5) business days after receipt of the dispute. The number of Qualifying Workweeks during the Relevant Period as a Full-Time Employee in a Covered Position established through Fulton's records (which will be zero for Excluded Individuals) will be determinative unless the paycheck stubs submitted by the disputing party establish a greater total number of Qualifying Workweeks, in which case the greater number of Qualifying Workweeks established by the disputing party will be used for payment unless the Administrator concludes that the paycheck stubs are not authentic or have been altered. If a valid dispute is timely and is determined by the Administrator to warrant a greater number of Qualifying Workweeks for the disputer before Settlement Payments have been issued to the Settlement Collective Members and Participating Class Members, all Settlement Payments to the Settlement Collective Members and Participating Class Members will be re-calculated by the Administrator to account for the revised total number of Qualifying Workweeks.

105.    The Administrator shall report, in summary or narrative form, the substance of the disputes it handles, and the Parties agree that the Administrator's decision will be final and binding as to them and agree not to challenge such decision should the disputing party request Court review.

106.    Nothing in this "Handling of Disputes" section will preclude any person from or be a substitute for submitting an objection to the Court.

## ADMINISTRATOR'S RESPONSIBILITIES REGARDING UNCLAIMED PAYMENTS

107.    All Settlement Payment checks will be valid for one hundred and eighty (180) calendar days from the date of the check (the "**Initial Check Cashing Period**"), will be mailed by the Administrator to the payee on the same date as that shown on the check, and will be accompanied by the cover letter attached hereto as Exhibit "D" when they are sent by the Administrator by U.S. First Class Mail. On the 90th day of the Initial Check Cashing Period, the Administrator shall send by postcard to all Settlement Collective Members and Participating Class Members who have not yet cashed their checks a reminder, in the form attached hereto as Exhibit "E," of the 180-day deadline for cashing their Settlement Payment check. At any point in the Initial Check Cashing Period, the Administrator shall have the authority to stop payment on a lost Settlement Payment check and issue a new one to a requesting Settlement Collective Member or Participating Class Member, and the Parties agree that all costs associated with doing so will be paid from the Net Settlement Amount. If the original Settlement Payment check included the Check Opt-In Form, the new check issued will contain the same Check Opt-In Form, and the Administrator shall perform the Reverse Positive Pay Process on all such Settlement Payment checks that are re-issued. At the end of the Initial Check Cashing Period, all uncashed Settlement Payment checks will be void.

108.    The amounts of any Settlement Payment checks that become void due to failure by the intended payee to negotiate them properly within the Initial Check Cashing Period will remain in the QSF overseen by the Administrator for an additional sixty (60) calendar days (the "**Second Check Cashing Period**").  At the beginning of the Second Check Cashing Period, the Administrator shall notify the intended payees by letter, sent to the address to which their Settlement Payment check was mailed, and email (if the Administrator has a personal email address for the payee), in the form attached hereto as Exhibit "F," that: (i) the 180 days for negotiating the Settlement Payment check have passed and, if applicable, the reason that the intended payee's previous effort to cash the check was rejected; (ii) where the Settlement Payment is on deposit; (iii) how the intended payee can claim the Settlement Payment within the Second Check Cashing Period in compliance with the Agreement; and (iv) the deadline for doing so. During the Second Check Cashing Period, any properly claimed Settlement Payments will be paid by a new check issued by the Administrator to the intended payee and will be valid and negotiable for sixty (60) days. If the original Settlement Payment check included the Check Opt-In Form, the new check issued during the Second Check Cashing Period will contain the same Check Opt-In Form, and the Administrator shall perform the Reverse Positive Pay Process on all such Settlement Payment checks that are re-issued.

109.    The Administrator shall provide a sworn declaration to counsel for the Parties that Class Counsel shall file with the Court, and serve proof of filing on Defendant's Counsel, within

fourteen (14) calendar days after the conclusion of the Second Check Cashing Period. The declaration will provide (a) a final accounting of payments made to all payees, (b) a list of all Claimants (with a redacted copy of each Claim Form attached as an exhibit to the declaration), (c) a list of all Settlement Participants who endorsed a Settlement Payment check with Check Opt-In Form language (with a copy of each Check Opt-In Form), and (d) a list of all Participating Class Members who did not become Claimants. Provided, however, that Class Counsel shall be relieved of the requirement to file Check Opt-In Forms and redacted Claim Forms if upon motion by Class Counsel as part of the motion for preliminary approval and/or motion for final approval, the Court expressly orders in the Preliminary Approval Order or Final Approval Order that Class Counsel may comply with the consent filing requirements of 29 U.S.C. § 216(b) by filing, and serving on Defendant's Counsel proof of filing, a declaration from the Administrator attaching a complete list of the names of all Claimants, all Settlement Collective Members who endorsed a Settlement Payment check with Check Opt-In Form language, and all Participating Class Members who did not become Claimants, with a corresponding unique identification number generated by the Administrator for each individual in these three categories of Settlement Participants.

110.    No later than sixty (60) calendar days after the conclusion of the Second Check Cashing Period, the Administrator shall remit to Fulton the amounts of uncashed Settlement Payment checks with Check Opt-In Form language on them plus any taxes paid in connection with those uncashed checks, which taxes shall be recovered by the Administrator from the taxing authorities. If any of the checks issued to Claimants or Participating Class Members are not cashed or otherwise negotiated by the conclusion of the Second Check Cashing Period, the amounts of those uncashed checks, as well as any unused portion of the Reserve Amount, will be paid by the Administrator from the QSF at the conclusion of the settlement administration to Legal Services of New Jersey, the charitable organization agreed to by the Parties, subject to the Court's approval in its Final Approval Order (*cy pres*).

### DUTIES OF THE PARTIES PRIOR TO PRELIMINARY APPROVAL

111.    Class Counsel shall provide Defendant's Counsel with a draft of the motion for preliminary approval, any exhibits (including without limitation declarations) to be offered in support of the motion, and the proposed preliminary approval order (collectively referred to as the "**Preliminary Approval Papers**") twenty-one (21) calendar days before they are filed with the Court so that Fulton and its counsel have sufficient time to review them, confer with Class Counsel about revisions, and agree to the Preliminary Approval Papers before they are filed.

112.    The motion and proposed order that are part of the Preliminary Approval Papers will seek the Court's confirmation that both copies of the backs of executed settlement checks with the Check Opt-In Form language and timely and valid Claim Forms will constitute valid consents to join under 29 U.S.C. § 216(b) and valid releases of the Released Claims.

113.    Class Counsel shall file with the Court as an exhibit to the motion for preliminary approval, the Agreement and its Exhibits, which will include the Claim Form (Exhibit "A"); the Notices of Settlement (Exhibits "B" and "C"); the cover letter enclosing the settlement check (Exhibit "D"); the reminder notices (Exhibits "E" and "F"); and the cover letter enclosing the tax forms (Exhibit "G").

## DUTIES OF THE PARTIES AND ADMINISTRATOR PRIOR TO FINAL APPROVAL

114.    In advance of the Final Approval Hearing and as ordered by the Court in its Preliminary Approval Order or another order, Class Counsel shall file with the Court a motion for final approval with any exhibits and a proposed Final Approval Order agreed to by the Parties (collectively, the "**Final Approval Papers**"). The motion and proposed order that are part of the Final Approval Papers will seek the Court's confirmation that both copies of the backs of executed settlement checks with the Check Opt-In Form language and timely and valid Claim Forms will constitute valid consents to join under 29 U.S.C. § 216(b) and valid releases of the Released Claims.

115.    The Final Approval Papers will be filed no sooner than thirty (30) calendar days after the Claim Deadline and, with the Court's approval, fourteen (14) days prior to the Final Approval Hearing.

116.    Class Counsel shall submit the Final Approval Papers to Defendant's Counsel at least fourteen (14) calendar days prior to filing them so that Defendant and its counsel have sufficient time to review them, confer with Class Counsel about revisions, and agree to the Final Approval Papers before they are filed.

117.    At least seven (7) business days prior to the filing of the Final Approval Papers, the Administrator shall provide to counsel for the Parties a sworn declaration of due diligence and proof of mailing with regard to the mailing of the Mailing Packets, including all Skip Tracing performed for those Settlement Collective Members and Settlement Class Members whose Mailing Packet was returned as undeliverable. Class Counsel shall be responsible for working with the Administrator to timely file the declaration of due diligence as an exhibit to the motion for final approval.

118.    The Parties agree that neither they nor their counsel shall encourage any Settlement Collective Member or Settlement Class Member to opt out of or object to the Settlement, or to appeal the Final Approval Order or order dismissing the Lawsuit with prejudice.

## REVOKING OR VOIDING THE AGREEMENT

119.    The Parties agree that Fulton may in its sole discretion revoke or void the Settlement prior to entry of the Final Approval Order by the Court if any of the following contingencies ("**Contingencies**") occur: (a) more than 5% of the Settlement Class opts out; (b) the Court refuses to deem both copies of the backs of executed settlement checks with the Check Opt-In Form language and timely and valid Claim Forms to constitute valid consents to join under 29 U.S.C. § 216(b) and a release of the Released Claims; (c) the Court modifies or rejects the Parties' agreement that Defendant will receive a payment from the QSF as specified in Paragraph 110 above; (d) fewer than all Plaintiffs execute the Agreement; or (e) the Court changes one or more of the additional Material Terms (defined below).

120.    "**Material Term**" means any term or condition of the Settlement that is so essential to the Agreement that Fulton would not agree to settle in its absence. Material Terms include the above-described Contingencies plus the following: (a) the Parties' agreement that

Fulton shall not be required to pay more than the Maximum Settlement Amount (except for employer-side payroll taxes); (b) the Parties' agreement that Fulton shall not pay any attorneys' fees and costs of Class Counsel beyond the amounts approved by the Court; (c) the Parties' agreement that Settlement Collective Members who submit untimely or invalid Claim Forms or otherwise do not become Claimants will receive Settlement Payment checks with the Check Opt-In Form and that the Reverse Positive Pay Process will be used with respect to such settlement checks; (d) the No Admission of Liability and Effect of Stipulations provisions in Paragraphs 49-55; (e) the Released Claims in Paragraph 74; and (f) the No Media Coverage/Non-Disparagement provision in Paragraph 124.

121.    If Fulton exercises its right to revoke the Agreement for any reason provided in Paragraphs 119 or 120 above, the Parties shall be returned to the positions they held on March 5, 2020, when the Court stayed all proceedings for purposes of settlement discussions.

122.    Fulton may exercise its option to void the Agreement by giving notice, in writing, to Class Counsel and to the Court prior to entry of the Final Approval Order. If Fulton revokes the Agreement because the Court changes one or more Material Terms identified in Paragraph 120, it shall be responsible for all costs of administration incurred up to the date of such revocation. If Fulton revokes the Agreement because any of the other Contingencies occur, the Parties shall equally bear the Administrator's fees and expenses incurred up to the date of such revocation.

## CONFIDENTIALITY OF SETTLEMENT MATERIALS

123.    The Parties and their counsel agree that all excerpts, summaries, or compilations that were created by Class Counsel or their agents from information produced by Fulton for purposes of settlement discussions pursuant to Federal Rule of Evidence 408, in whatever format maintained (hard copy, electronic, digital, or cloud) by Class Counsel, will remain strictly confidential and will not be disclosed to the Court, any Settlement Collective Member or Settlement Class Member, or any other person or entity absent the express agreement of Fulton or an order of the Court.

## NO MEDIA COVERAGE/NON-DISPARAGEMENT

124.    Plaintiffs and Class Counsel agree that they will not issue any press release, initiate press coverage, or make any statements to the press concerning the Lawsuit or the Agreement. If Plaintiffs or Class Counsel receive inquiries from the press about the Lawsuit or the Settlement before the Effective Date, they will respond only with "no comment." After the Effective Date, they will respond only with "the Lawsuit has been successfully resolved to the mutual satisfaction of the Parties." Class Counsel also agree that they will not publish any statements on media or social media (including but not limited to Twitter, Facebook, LinkedIn, MySpace, Instagram, Topix, Reddit, YouTube, and Tumblr) concerning the Lawsuit or the Agreement. Within five (5) days after the Parties' execution of the Agreement, Class Counsel shall remove the consent to join form from their law firm website, shall limit information about the Lawsuit and its Settlement to information that is publicly available on the Court's docket, and shall conform the information about the Lawsuit and its Settlement on their law firm website to match the terms of the Agreement, with language to the effect that a settlement has been reached,

pending court approval. The Administrator's Settlement Website will be the sole location of the Claim Form that will operate as a consent to join the Settlement of the Lawsuit. Class Counsel's law firm website may contain a link to the Settlement Website where the Claim Form will be posted and available for electronic submission to the Administrator, but Class Counsel's law firm website will not contain a consent to join or Claim Form. Finally, Plaintiffs and Class Counsel agree not to make false or commercially disparaging comments or statements about the Lawsuit or the Agreement.

## MISCELLANEOUS TERMS AND CONDITIONS

125. The Parties are represented by competent counsel, and they have had an opportunity to consult and have consulted with counsel prior to executing the Agreement.

126. The Parties and their counsel shall cooperate with each other in good faith to accomplish the terms, Effective Date, and all obligations of the Agreement, including executing and filing documents and taking any other actions as may reasonably be necessary to implement the terms of the Agreement; to obtain the Court's Final Approval Order; in the event of an appeal, to secure a complete affirmance of the Final Approval Order with all rights of appeal exhausted; and to fulfill all obligations subsequent to the Effective Date that are required by the Agreement and the Final Approval Order.

127. Each Plaintiff represents, covenants, and warrants that she has not directly or indirectly assigned, transferred, encumbered, or purported to assign, transfer, or encumber to any person or entity any portion of any liability, claim, demand, action, cause of action, or rights herein released and discharged except as set forth herein and in connection with hiring Class Counsel.

128. Fulton, Defendant's Counsel, Plaintiffs, and Class Counsel do not intend anything contained herein to constitute legal advice regarding the taxability of any amount paid hereunder, and no person shall rely on anything contained in the Agreement or conveyed by Fulton and/or Defendant's Counsel as such. The tax issues for each Plaintiff, Settlement Collective Member, and Participating Class Member may be unique, and each such individual should obtain his or her own independent tax advice concerning any payments resulting from the Agreement.

129. Unless otherwise specifically provided herein, all notices, demands, or other communications given under the Agreement will be in writing and will be deemed to have been duly given as of the third calendar day after mailing by U.S. Postal Service certified mail with return receipt requested or by another trackable delivery method (such as Federal Express or United Parcel Service), addressed as follows:

To Plaintiffs and the Settlement Collective and Settlement Class:

Matthew D. Miller
Justin L. Swidler
SWARTZ SWIDLER, LLC
1101 Kings Highway N, Suite 402
Cherry Hill, NJ 08034

To Defendant:

Louisa Johnson                          Robert T. Szyba
SEYFARTH SHAW LLP                       SEYFARTH SHAW LLP
1075 Peachtree Street NE, Suite 2500    620 Eighth Avenue, 32nd Floor
Atlanta, GA 30309                       New York, New York 10010

## CONSTRUCTION AND GOVERNING LAW

130.    The Agreement is the result of lengthy, intensive arm's-length negotiations between the Parties and their counsel. The Agreement will not be construed in favor of or against any party by reason of the extent to which any party or his, her, or its counsel participated in its drafting.

131.    To the extent state law governs interpretation of the Agreement, it will be interpreted and governed under the laws of the State of New Jersey.

132.    Paragraph titles or captions contained herein are inserted as a matter of convenience and for reference, and do not define, limit, extend, or describe the scope of the Agreement or any provision hereof. Each term of the Agreement is contractual and not merely a recital.

133.    The Agreement constitutes the entire agreement by the Parties about the subject matters addressed in it. No extrinsic, oral or written, representations or terms will modify, vary, or contradict the terms of the Agreement.

## MODIFICATION

134.    The Agreement may not be changed, altered, or modified, except in writing and signed by all Parties.

## SIGNATORIES

135.    Because the Settlement Collective Members and Settlement Class Members are so numerous, it is impossible or impractical to have each Settlement Participant execute the Agreement. The Notices of Settlement and Claim Form will advise all Settlement Collective Members and Settlement Class Members of the binding nature of the release of Released Claims and such will have the same force and effect as if the Agreement were executed by each Settlement Participant.

136.    The signatories hereby represent that they are fully authorized to enter into the Agreement and bind the Parties to the terms and conditions of it.

137.    The Agreement will be binding upon and inure to the benefit of the Parties and their respective spouses, heirs, trustees, and executors, administrators, successors, and assigns, including the Released Parties.

138.     The Agreement may be executed in counterparts, and when each party has signed and delivered at least one such counterpart, each counterpart will be deemed an original, which, when taken together with other signed counterparts, will constitute one Agreement that will be binding upon and effective as to the Parties and their counsel. Copies and facsimile transmissions of signatures will be considered the same as an original signature.

**AGREED AND ENTERED INTO BY THE PARTIES AND CLASS COUNSEL ON THE DATES SET FORTH BELOW:**

Dated: _____, 2021          By:_____
                                                               Desiree Kress


Dated: _____, 2021          By:_____
                                                               Moneta Stephens


Dated: _____, 2021          SWARTZ SWIDLER, LLC


                                                               By:_____


Dated: ___Feb. 11___, 2021          FULTON BANK, N.A.


                                                               By:_____
                                                                    Daniel R. Stober

                                                               Its: _Senior Executive Vice
                                                               President and Chief Legal officer


Dated: _February 11_, 2021          SEYFARTH SHAW LLP


                                                               By:__Louisa Johnson_____

138.    The Agreement may be executed in counterparts, and when each party has signed and delivered at least one such counterpart, each counterpart will be deemed an original, which, when taken together with other signed counterparts, will constitute one Agreement that will be binding upon and effective as to the Parties and their counsel. Copies and facsimile transmissions of signatures will be considered the same as an original signature.

**AGREED AND ENTERED INTO BY THE PARTIES AND CLASS COUNSEL ON THE DATES SET FORTH BELOW**:

Dated: __February 9_____, 2021    By:_____
Desiree Kress (Feb 9, 2021 15:08 EST)
                                        Desiree Kress

Dated: _____, 2021    By:_____
                                        Moneta Stephens

Dated: _____, 2021    SWARTZ SWIDLER, LLC

                                     By:_____

Dated: _____, 2021    FULTON BANK, N.A.

                                     By:_____

                                     Its:_____

Dated: _____, 2021    SEYFARTH SHAW LLP

                                     By:_____

25

138.    The Agreement may be executed in counterparts, and when each party has signed and delivered at least one such counterpart, each counterpart will be deemed an original, which, when taken together with other signed counterparts, will constitute one Agreement that will be binding upon and effective as to the Parties and their counsel. Copies and facsimile transmissions of signatures will be considered the same as an original signature.

**AGREED AND ENTERED INTO BY THE PARTIES AND CLASS COUNSEL ON THE DATES SET FORTH BELOW**:

Dated: _____, 2021          By:_____
                                                          Desiree Kress

Dated: 02/09_____, 2021          By:_____
                                                          Moneta Stephens
                                            *Moneta Stephens (Feb 9, 2021 15:44 EST)*

Dated: _____, 2021          SWARTZ SWIDLER, LLC


                                            By:_____

Dated: _____, 2021          FULTON BANK, N.A.


                                            By:_____


                                            Its:_____

Dated: _____, 2021          SEYFARTH SHAW LLP


                                            By:_____

138.    The Agreement may be executed in counterparts, and when each party has signed and delivered at least one such counterpart, each counterpart will be deemed an original, which, when taken together with other signed counterparts, will constitute one Agreement that will be binding upon and effective as to the Parties and their counsel. Copies and facsimile transmissions of signatures will be considered the same as an original signature.

**AGREED AND ENTERED INTO BY THE PARTIES AND CLASS COUNSEL ON THE DATES SET FORTH BELOW:**

Dated: _____, 2021          By: _____
                                               Desiree Kress

Dated: _____, 2021          By: _____
                                               Moneta Stephens

Dated: February 9_____, 2021        SWARTZ SWIDLER, LLC

                                       By: _M. Miller_____

Dated: _____, 2021          FULTON BANK, N.A.

                                       By: _____

                                       Its: _____

Dated: _____, 2021          SEYFARTH SHAW LLP

                                       By: _____

25

# <u>EXHIBIT A</u>

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| D. KRESS, individually and on behalf of all those similarly situated, | Case No.: 1:19-cv-18985-CDJ-JS |
| Plaintiff, | **<u>CLAIM FORM</u>** |
| v. | UNIQUE CLAIM ID NO. [INSERT] |
| FULTON BANK, N.A., | QUALIFYING WORKWEEKS: [INSERT] |
| Defendant. | |

| | |
|---|---|
| [000000000000]<br><br>Class Member Name<br>Address 1<br>Address 2<br>City, State Zip | Name/Address Changes (if any)<br><br>_____  _____<br>First Name                             Last Name<br><br>_____<br>Address<br><br>_____  _____  _____<br>City                                                    State      Zip |

To verify that you are the correct recipient of this Claim Form and to allow the Administrator to reach you in a timely manner if any information you provide on this form is unclear, you must provide the following additional information below. You will not be contacted for any reason unrelated to the settlement, and your information will be kept confidential by the Administrator.

**Telephone No.:**_____ **Last 4 Digits of Social Security No.:**_____

**Consent to Join:** By signing below and in accordance with the allegations in the Lawsuit as described in the Notice of Settlement I received, I affirm that I believe I was not paid for performing the branch opening and/or closing procedures on at least one occasion as a Full-Time Employee in a Covered Position during the Relevant Period, as defined in the Notice of Settlement I received. I consent to join the Settlement of the above-styled lawsuit, and I authorize Class Counsel to file evidence of my consent with the Court. I agree to release and not to sue for the Released Claims defined in the Notice of Settlement, if the Court finally approves the Settlement.

**Signature:** _____

\*IN ORDER FOR THIS CLAIM FORM TO BE VALID, YOU MUST SIGN AND TIMELY RETURN THIS CLAIM FORM WITHOUT ALTERING THE CONSENT TO JOIN AND RELEASE LANGUAGE ABOVE. YOU MAY FAX, EMAIL, OR MAIL THIS CLAIM FORM TO THE ADMINISTRATOR USING THE CONTACT INFORMATION BELOW, OR SUBMIT IT VIA THE SETTLEMENT WEBSITE USING THE LAST FOUR DIGITS OF YOUR SOCIAL SECURITY NUMBER, **ON OR BEFORE [DATE]**:

[NAME AND MAILING ADDRESS]
[EMAIL ADDRESS]
[FAX NUMBER]
[SETTLEMENT WEBSITE ADDRESS]

# EXHIBIT B

### NOTICE OF SETTLEMENT OF FLSA COLLECTIVE AND CLASS ACTION LAWSUIT

*Kress v. Fulton Bank, N.A., et al.* **(D.N.J. Case No. 1:19-cv-18985-CDJ-JS)**

### PLEASE READ THIS NOTICE CAREFULLY

*A court authorized this Notice. It is **not** a solicitation from a lawyer, and you are **not** being sued. However, your rights could be affected by how you respond to this Notice.*

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | |
|---|---|
| **FILE A CLAIM FORM** | Confirm your desire to participate in the Settlement and receive a Settlement Payment by completing, signing, and returning the enclosed Claim Form. |
| **OPT OUT** | Get no payment. This is the only option that allows you to ever be part of any other lawsuit against Fulton regarding payment for performing opening or closing procedures during the time August 9, 2017 through September 1, 2020. |
| **OBJECT** | Write a statement about what you object to in the Settlement for the administrator to file with the Court. |

You are receiving this Notice of Settlement of FLSA Collective and Class Action Lawsuit ("Notice") in the above-titled Lawsuit pending against Defendant Fulton Bank, N.A. ("Defendant" or "Fulton"), because Fulton's records show that you have been designated as full-time in Fulton's HR system known as UltiPro ("Full-Time Employee") and have worked for Fulton Bank, N.A. in New Jersey, or Fulton Bank of New Jersey, at any time from August 9, 2017 through September 1, 2020 (the "Relevant Period") in a retail banking branch in one or more of the following hourly-paid positions, including those with a designation of senior, floating, or bilingual: teller, teller supervisor/head teller, customer service representative, customer service representative supervisor, assistant branch manager, financial center supervisor, universal banker, or sales and service specialist (collectively, the "Covered Positions").

You may also meet the definition for the Settlement Collective, which includes all current and former Full-Time Employees who have worked for Fulton Bank, N.A., or any bank which merged into Fulton Bank, N.A., at any time during the Relevant Period in a retail banking branch in one or more Covered Positions.

Because Fulton's records reflect that you meet the definition for the Settlement Class (and possibly also the Settlement Collective), **you are entitled to receive money from the Settlement[1] of the Lawsuit as described below.**

| 1. Why Should You Read This Notice of Settlement? |
|---|

This Notice of Settlement explains your right: (1) to share in the monetary proceeds of the Settlement; (2) to exclude yourself ("opt out") from the Settlement; or (3) to object to the

---

[1] Capitalized terms in this Notice are defined in the Parties' Settlement Agreement and Release ("Settlement" or "Agreement") which is available for review at [Settlement Website address].

2

Settlement. The United States District Court for the District of New Jersey has preliminarily approved the Settlement as fair and reasonable. The Court will hold a final approval hearing on _____ __, 202_ at __:__ _.m., before the Honorable C. Darnell Jones, II, sitting by designation in the United States District Court for the District of New Jersey, at _____ _____ (the "Final Approval Hearing").

## 2.   What Is the Lawsuit About?

Plaintiff alleges that she and Settlement Collective Members and Settlement Class Members (including you) were not paid properly for all of the time that they spent performing branch opening procedures while working for Fulton in violation of federal and state laws.

Fulton denies these allegations, and nothing contained in this Notice, or the Agreement itself, will be construed as or deemed an admission of liability, culpability, negligence, or wrongdoing on the part of Fulton. However, to avoid the risk, burden, expense, and inconvenience of continued litigation, the Parties have concluded that it is in their best interest to resolve and settle the Lawsuit.

## 3.   What Are the Monetary Terms Of the Settlement?

Fulton has agreed to pay a maximum of One Million Dollars ($1,000,000.00) to settle the Lawsuit ("Maximum Settlement Amount") on behalf of the entire collective and class.

The Maximum Settlement Amount includes: (1) all payments to be made to Settlement Collective Members and those Settlement Class Members who chose to participate ("Participating Class Members"), along with the employees' share of payroll taxes for the portion of the payments treated as wages; (2) attorneys' fees and costs for Class Counsel that are approved by the Court; (3) all Court-approved settlement administration fees and costs; (4) service payments of up to a total of $5,500 for Plaintiffs, if approved by the Court; and (5) a Reserve Amount of $20,000 to cover any correctible errors or omissions that are made during the Settlement administration process. Service payments of up to $5,000.00 and $500.00, respectively will be requested for Desiree Kress, who originally retained Class Counsel to file the Lawsuit, and Moneta Stephens, who joined the Lawsuit as an opt-in plaintiff before settlement. These individuals assisted in the investigation of the Lawsuit and in the preparation for and outcome of the settlement conference that led to this settlement.

Payments to Settlement Collective Members and Participating Class Members will be made based on the distribution formula, which provides a minimum, pre-tax payment of $125 plus a *pro rata* share of the funds remaining after payment of attorneys' fees and costs, settlement administration fees and costs, service payments, and the Reserve Amount.

## 4.   How Much Can You Expect To Receive, And When Will You Receive It?

If you do not request exclusion (*i.e.*, opt out) of the Settlement, you will receive a settlement check for the gross, pre-tax amount of $125.00 (the "Minimum Payment") plus a *pro rata* share of the fund remaining after all other payments described in Question 3 above are made. The *pro rata* share will be determined by multiplying your number of Qualifying Workweeks by the Per

Workweek Amount.[2] Half of your Settlement Payment will be subject to applicable local, state, and federal taxes. You do not need to take any further action in order to receive this settlement check.

However, to ensure that you receive your Settlement Payment at the correct address and to confirm your desire to participate in the Settlement and receive a Settlement Payment, you may become a "Claimant" by completing, signing, and returning the enclosed Claim Form, without altering the consent to join and release language above the signature line, to the Administrator by the deadline set forth below.

Fulton's time and HR records will be used to determine your number of Qualifying Workweeks and are deemed presumptively correct. "Qualifying Workweeks" include all full and partial workweeks during the Relevant Period in which you recorded any amount of actual worktime as a Full-Time Employee in a Covered Position. Paid time off and leaves of absence do not count as worktime. If you disagree with the number of Qualifying Workweeks set forth on your enclosed Claim Form, you must follow the procedures set forth in the "Handling of Disputes" section of the Agreement for raising a timely and valid dispute.

If you do not request exclusion from the Settlement, the Administrator will mail a settlement check to you within 30 calendar days after the Agreement's Effective Date. You will have 180 calendar days from the date shown on the settlement check to cash or deposit it.

**It is your responsibility to keep a current address on file with the Administrator to ensure receipt of your settlement check. If you fail to keep your address current, you may not receive your settlement check.**

After 180 days, any uncashed settlement checks will become void, and the funds from them will be held by the Administrator in the Qualified Settlement Fund for another 60 calendar days. The intended payees of those funds will be notified by the Administrator at the addresses on file for the payees where the funds are on deposit, how the funds can still be claimed, and the deadline for doing so.

After expiration of the second 60-day period, the amounts of the uncashed checks and tax refunds on the uncashed checks will be remitted either to Legal Services of New Jersey, the charitable organization agreed to by the Parties, subject to Court approval, or Fulton, as provided for in the Agreement.

| 5. What Does Signing the Claim Form Mean? |
| --- |

By timely signing and returning the enclosed Claim Form without alteration of the language in it, you are (a) electing to opt in to the Settlement; (b) authorizing Class Counsel to file with the Court evidence of your consent to join the Settlement of the Lawsuit as a party plaintiff and, unless

---

[2] Your Qualifying Workweeks are set forth on the enclosed Claim Form that is unique to you. Pursuant to the Agreement, to determine the Per Workweek Amount, the Administrator will deduct from the Net Settlement Amount the total to be paid as Minimum Payments to all Settlement Participants to arrive at a Residual Net Settlement Amount. The Administrator shall divide the Residual Net Settlement Amount by the total sum of Qualifying Workweeks for all Settlement Participants to obtain the Per Workweek Amount.

excused by the Court, a redacted copy of the Claim Form; (c) asserting a claim under the federal Fair Labor Standards Act and any applicable state and/or local laws for all wages, including overtime, that allegedly have not been paid for branch opening procedures; and (d) agreeing to release and not to sue for any of the Released Claims as set forth in the Agreement and below.

***If you alter the consent to join and release language on the Claim Form, fail to complete it, or fail to sign your name on the signature line of it, you will <u>not</u> be deemed a valid Claimant.***

***If you consent to join the Settlement of the Lawsuit by completing and signing a valid and timely Claim Form but the Settlement's Effective Date does not occur for any reason, your consent to join will be deemed to have been withdrawn and will be stricken by the Court and of no effect.***

## 6.  What Claims Are You Releasing By Participating In the Settlement?

By submitting a timely and valid Claim Form or by becoming a "Participating Class Member" (which you will be if you do not file a timely and valid Request for Exclusion), you will be agreeing to release claims you may have against the Released Parties.[3] The claims you will be releasing are set forth in the Agreement under "Released Claims." For the actual language of the Released Claims (to which you will be legally bound), you should refer to the Agreement. A summary of the Released Claims is as follows:

### <u>Summary of Released Claims</u>

By not opting out of the settlement, you will release and discharge the Released Parties from any and all claims for non-payment arising from your performance of bank branch opening and/or closing procedures from August 9, 2017 through the Effective Date of the Agreement. Also released are all claims for contributions to any 401(k) or other retirement or employee benefit plan based on Settlement Payments made by reason of the Agreement.

## 7.  How Can You Request Exclusion From Or Object To The Settlement?

**Requests for Exclusion.**  If you do not wish to be bound by the Settlement, you must opt out of the Settlement by submitting a written Request for Exclusion postmarked, timestamped, or marked as received by the Administrator, on or before [Claim Deadline]. To be deemed valid, the Request for Exclusion must contain your full name, mailing address, and the last four digits of your Social Security number. It also must contain a clear statement of your desire to opt out of the Settlement, and it must be signed individually by you. No Request for Exclusion may be made on behalf of a group or class. The Request for Exclusion must be sent to the Administrator by mail, email, or facsimile at:

[MAILING ADDRESS]
[EMAIL ADDRESS]
[FAX NUMBER]

---

[3] "Released Parties" means Defendant and each of its parents, divisions, subsidiaries, affiliates, sibling entities, investors, predecessors, and successors, and each of their current and former owners, stockholders, directors, officers, members, fiduciaries, insurers, employees, attorneys, representatives, and agents.

If you submit a timely and valid Request for Exclusion (*i.e.*, opt out of the Settlement), you will not receive a settlement check, will not be bound by the Settlement, and will not have the right to object to or comment on the Settlement or appeal an order granting final approval of the Settlement and/or dismissing the Lawsuit.

**Objections.** If you have not opted out of the Settlement by submitting a timely and valid Request for Exclusion and wish to object to the Settlement, you must submit a written statement specifically describing your objection, individually sign that statement, and submit it to the Administrator. You may also, if you wish, appear at the Final Approval Hearing to discuss your objection with the Court and the Parties. To be considered valid, your objection must include (1) a statement of your specific reasons for objecting to the Settlement; (2) the factual and legal grounds for your objection(s) along with any evidentiary support for each objection you wish to bring to the Court's attention; (3) your full name and mailing address; (4) the Covered Position(s) that you held; (5) your dates of employment at Fulton in Covered Positions as a Full-Time Employee; (6) the last four digits of your Social Security number; (7) a statement as to whether you and/or your attorney intend to appear at the Final Approval Hearing; and (8) your signature. To be deemed timely, your objection must bear a postmark of, timestamp of, or be marked as received by the Administrator, on or before [Claim Deadline].

If your attorney plans to attend the Final Approval Hearing, he or she must file with the Court a notice of appearance contemporaneously with the submission to the Administrator of the objection and serve that notice of appearance, on the same date as it is filed with the Court, on both (i) Class Counsel, as specified below in answer to Question 8, and (ii) Fulton's counsel.

In order to file an objection and be heard at the Final Approval Hearing, you must not have opted out of the Settlement. If the Court rejects your objection, you will be bound by the Settlement, including the Released Claims section of the Settlement. If you file an objection, the Parties may seek additional information from you through discovery to understand your objections prior to the Final Approval Hearing.

If you wish to object to the Settlement but fail to file a timely and valid written objection in the manner specified herein by the deadline for doing so, you may be deemed to have waived any objection and may be foreclosed from making any objection (whether by appeal or otherwise) to the Settlement.

## 8.   Who Are the Attorneys Representing Plaintiffs, the Settlement Collective, and the Settlement Class?

Plaintiffs, Settlement Collective Members, and Settlement Class Members are represented by the following attorneys acting as Class Counsel:

Matthew D. Miller
Justin L. Swidler
Richard S. Swartz
SWARTZ SWIDLER, LLC
1101 Kings Highway N, Suite 402
Cherry Hill, NJ 08034

(856) 685-7420

## 9.  How Will Class Counsel Be Paid?

Class Counsel will be paid from the Maximum Settlement Amount. You do not have to pay them. The Agreement provides that Class Counsel will ask the Court to approve payment of attorneys' fees of thirty-three and one-third percent (33 1/3%) of the Maximum Settlement Amount ($333,333.33) plus out-of-pocket costs not to exceed $600.00. Under the terms of the Agreement, they will receive no other fees or costs beyond those approved by the Court. The amount of attorneys' fees and costs to be awarded will be determined by the Court at the Final Approval Hearing. The Administrator's court-approved costs and fees will be paid directly out of the Qualified Settlement Fund.

## 10.  Where Can You Get More Information?

If you have questions about the Notice of Settlement, including the enclosed Claim Form, or the Settlement, or if you did not receive the Notice of Settlement and Claim Form in the mail but believe that you are or may be a member of the Settlement Collective and/or Settlement Class, you may contact the Administrator (contact information listed herein), for more information or to request that a copy of the Notice of Settlement and Claim Form be sent to you in the mail. If you wish to communicate directly with Class Counsel, you may contact them (contact information listed above). You may also seek advice and guidance from your own private attorney at your own expense, if you so desire.

The Notice of Settlement is only a summary. In the event of a conflict or inconsistency between the Agreement and this Notice or the enclosed Claim Form, the terms of the Agreement will control. ***For more detailed information, you may review the Agreement, which contains the complete terms of the Settlement and is available at _____.***

**PLEASE DO NOT WRITE OR TELEPHONE THE COURT, FULTON, OR DEFENDANT'S COUNSEL FOR INFORMATION ABOUT THE SETTLEMENT OR THE LAWSUIT.**

Dated: _____

# <u>EXHIBIT C</u>

**NOTICE OF SETTLEMENT OF FLSA COLLECTIVE ACTION LAWSUIT**

***Kress v. Fulton Bank, N.A., et al.* (D.N.J. Case No. 1:19-cv-18985-CDJ-JS)**

**<u>PLEASE READ THIS NOTICE CAREFULLY</u>**

*A court authorized the below. It is **not** a solicitation from a lawyer, and you are **not** being sued. However, your rights could be affected by how you respond to the below.*

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | |
|---|---|
| **FILE A CLAIM FORM** | Ensure that you receive your Settlement Payment check at the correct address and confirm your desire to participate in the Settlement by completing, signing, and returning the enclosed Claim Form. |
| **DO NOTHING** | You will receive your Settlement Payment at the address Fulton Bank, N.A. has on file and may decide whether to participate in the Settlement upon receipt of your Settlement Payment check. |

You are receiving this Notice of Settlement of FLSA Collective Action Lawsuit ("Notice") in the above-titled Lawsuit pending against Defendant Fulton Bank, N.A. ("Defendant" or "Fulton") because Fulton's records show that you have been designated as full-time in Fulton's HR system known as UltiPro ("Full-Time Employee") and worked for Fulton Bank, N.A., or any bank which merged into Fulton Bank, N.A., at any time from August 9, 2017 through September 1, 2020 (the "Relevant Period") in a retail banking branch in one or more of the following hourly-paid positions, including those with a designation of senior, floating, or bilingual: teller, teller supervisor/head teller, customer service representative, customer service representative supervisor, assistant branch manager, financial center supervisor, universal banker, or sales and service specialist (collectively, the "Covered Positions").

Because the Bank's records reflect that you meet this definition, **you are entitled to receive money from the Settlement[1] of the Lawsuit, as described below.**

| **1.    Why Should You Read This Notice of Settlement?** |
|---|

This Notice of Settlement explains your right to share in the monetary proceeds of the Settlement. The United States District Court for the District of New Jersey has preliminarily approved the Settlement as fair and reasonable. The Court will hold a final approval hearing on _____ __, 202_ at __:__ _.m., before the Honorable C. Darnell Jones, II, sitting by designation in the United States District Court for the District of New Jersey, at _____ (the "Final Approval Hearing").

---

[1] Capitalized terms in this Notice are defined in the Parties' Settlement Agreement and Release ("Settlement" or "Agreement") which is available for review at [Settlement Website address].

## 2.    What Is the Lawsuit About?

Plaintiff alleges that she and the Settlement Class Members and Settlement Collective Members (including you) were not paid properly for all of the time that they spent performing branch opening procedures while working for Fulton in violation of federal and state laws.

Fulton denies these allegations, and nothing contained in this Notice, or the Agreement itself, will be construed as or deemed an admission of liability, culpability, negligence, or wrongdoing on the part of Fulton. However, to avoid the risk, burden, expense, and inconvenience of continued litigation, the Parties have concluded that it is in their best interest to resolve and settle the Lawsuit.

## 3.    What Are the Monetary Terms Of the Settlement?

Fulton has agreed to pay a maximum of One Million Dollars ($1,000,000.00) to settle the Lawsuit ("Maximum Settlement Amount") on behalf of the entire class and collective.

The Maximum Settlement Amount includes: (1) all payments to be made to Settlement Collective Members and those Settlement Class Members who chose to participate ("Participating Class Members"), along with the employees' share of payroll taxes for the portion of the payments treated as wages; (2) attorneys' fees and costs for Class Counsel that are approved by the Court; (3) all Court-approved settlement administration fees and costs; (4) service payments of up to a total of $5,500 for Plaintiffs, if approved by the Court; and (5) a Reserve Amount of $20,000 to cover any correctible errors or omissions that are made during the Settlement administration process. Service payments of up to $5,000.00 and $500.00, respectively will be requested for Desiree Kress, who originally retained Class Counsel to file the Lawsuit, and Moneta Stephens, who joined the Lawsuit as an opt-in plaintiff before settlement. These individuals assisted in the investigation of the Lawsuit and in the preparation for and outcome of the settlement conference that led to this settlement.

Payments to Settlement Collective Members and Participating Class Members will be made based on the distribution formula, which provides a minimum, pre-tax payment of $125 plus a *pro rata* share of the funds remaining after payment of attorneys' fees and costs, settlement administration fees and costs, service payments, and the Reserve Amount.

## 4.    How Much Can You Expect To Receive, And When Will You Receive It?

You will receive a settlement check for the gross, pre-tax amount of $125.00 (the "Minimum Payment") plus a *pro rata* share of the fund remaining after all other payments described in Question 3 above are made. The *pro rata* share will be determined by multiplying your number of Qualifying Workweeks by the Per Workweek Amount.[2] Half of your Settlement Payment will be

---

[2] Your Qualifying Workweeks are set forth on the enclosed Claim Form that is unique to you. Pursuant to the Agreement, to determine the Per Workweek Amount, the Administrator will deduct from the Net Settlement Amount the total to be paid as Minimum Payments to all Settlement Participants to arrive at a Residual Net Settlement Amount. The Administrator shall divide the Residual Net Settlement Amount by the total sum of Qualifying Workweeks for all Settlement Participants to obtain the Per Workweek Amount.

subject to applicable local, state, and federal taxes. You do not need to take any further action in order to receive this settlement check.

However, to ensure that you receive your Settlement Payment at the correct address and to confirm your desire to participate in the Settlement and receive a Settlement Payment, you may become a "Claimant" by completing, signing, and returning the enclosed Claim Form, without altering the consent to join and release language above the signature line, to the Administrator by the deadline set forth below.

Fulton's HR and time records will be used to determine your number of Qualifying Workweeks and are deemed presumptively correct. "Qualifying Workweeks" include all full and partial workweeks during the Relevant Period in which you recorded any amount of actual worktime as a Full-Time Employee in a Covered Position. Paid time off and leaves of absence do not count as worktime. If you disagree with the number of Qualifying Workweeks set forth on your enclosed Claim Form, you must follow the procedures set forth in the "Handling of Disputes" section of the Agreement for raising a timely and valid dispute.

The Administrator will mail a settlement check to you within 30 calendar days after the Agreement's Effective Date. You will have 180 calendar days from the date shown on the settlement check to endorse it on the designated signature line, without alteration of any of the language that may be on the back of the check (the "Check Opt-In Form"), and cash or deposit it. If you fail to sign it or if you alter the Check Opt-In Form language on the back of the check, the check will be void and payment to you will be rejected.

**It is your responsibility to keep a current address on file with the Administrator to ensure receipt of your settlement check. If you fail to keep your address current, you may not receive your settlement check.**

After 180 days, any uncashed settlement checks will become void, and the funds from them will be held by the Administrator in the Qualified Settlement Fund for another 60 calendar days. The intended payees of those funds will be notified by the Administrator at the addresses on file for the payees where the funds are on deposit, how the funds can still be claimed, and the deadline and proper manner for doing so.

After expiration of the second 60-day period, the amounts of the uncashed checks and tax refunds on the uncashed checks will be remitted either to Legal Services of New Jersey, the charitable organization agreed to by the Parties, subject to Court approval, or Fulton, as provided for in the Agreement.

## 5.   What Does Signing the Check Opt-In Form or the Claim Form Mean?

By timely signing and returning the enclosed Claim Form without alteration of the language in it, or timely signing the Check Opt-In Form on the back of and negotiating your Settlement Payment check without altering the language of it, you are (a) electing to opt in and participate in the Settlement; (b) authorizing Class Counsel to file with the Court evidence of your consent to join the Settlement of the Lawsuit as a party plaintiff and, unless excused by the Court, a copy of the Check Opt-In Form or a redacted copy of the Claim Form; (c) asserting a claim under the federal

Fair Labor Standards Act and any applicable state and/or local laws for all wages, including overtime, that allegedly have not been paid for branch opening procedures; and (d) agreeing to release and not sue for any of the Released Claims as set forth in the Agreement and below.

*If you alter the consent to join and release language on the Claim Form, fail to complete it, or fail to sign your name on the signature line of it, you will __not__ be deemed a valid Claimant.*

*If you alter the consent to join and release language of the Check Opt-In Form on the back of your settlement check, if you fail to sign your name on the "Endorsed:" line of it, or if you fail to cash the settlement check within the time periods stated above, the settlement check will become void, and payment of it will be rejected.*

*If you consent to join the Settlement of the Lawsuit by completing and signing a valid and timely Claim Form or endorsing a Check Opt-In Form but the Settlement's Effective Date does not occur for any reason, your consent to join will be deemed to have been withdrawn and will be stricken by the Court and of no effect.*

| **6.   What Claims Are You Releasing By Participating In the Settlement?** |
| --- |

By submitting a timely and valid Claim Form and/or signing your Settlement Payment check without alteration of the Check Opt-In Form language on the back of it, you will be agreeing to release claims you may have against the Released Parties.[3] The claims you will be releasing are set forth in the Agreement under "Released Claims."  For the actual language of the Released claims (to which you will be legally bound), you should refer to the Agreement. A summary of the Released Claims is as follows:

### Summary of Released Claims

You will release and discharge the Released Parties from any and all claims for non-payment arising from your performance of bank branch opening and/or closing procedures from August 9, 2017 through the Effective Date of the Agreement. Also released are all claims for contributions to any 401(k) or other retirement or employee benefit plan based on Settlement Payments made by reason of the Agreement.

| **7.   Who Are the Attorneys Representing Plaintiffs, the Settlement Collective, and the Settlement Class?** |
| --- |

Plaintiffs, Settlement Collective Members, and Settlement Class Members are represented by the following attorneys acting as Class Counsel:

Matthew D. Miller

Justin L. Swidler

---

[3] "Released Parties" means Defendants and each of their parents, divisions, subsidiaries, affiliates, sibling entities, investors, predecessors, and successors, and each of their current and former owners, stockholders, directors, officers, members, fiduciaries, insurers, employees, attorneys, representatives, and agents.

Richard S. Swartz
SWARTZ SWIDLER, LLC
1101 Kings Highway N, Suite 402
Cherry Hill, NJ 08034
(856) 685-7420

## 8.    How Will Class Counsel Be Paid?

Class Counsel will be paid from the Maximum Settlement Amount. You do not have to pay them. The Agreement provides that Class Counsel will ask the Court to approve payment of attorneys' fees of thirty-three and one-third percent (33 1/3%) of the Maximum Settlement Amount ($333,333.33) plus out-of-pocket costs not to exceed $600.00. Under the terms of the Agreement, they will receive no other fees or costs beyond those approved by the Court. The amount of attorneys' fees and costs to be awarded will be determined by the Court at the Final Approval Hearing. The Administrator's court-approved costs and fees will be paid directly out of the Qualified Settlement Fund.

## 9.    Where Can You Get More Information?

If you have questions about the Notice of Settlement, including the enclosed Claim Form, or the Settlement, or if you did not receive the Notice of Settlement and Claim Form in the mail but believe that you are or may be a member of the Settlement Collective and/or Settlement Class, you may contact the Administrator (contact information listed herein), for more information or to request that a copy of the Notice of Settlement and Claim Form be sent to you in the mail. If you wish to communicate directly with Class Counsel, you may contact them (contact information listed above). You may also seek advice and guidance from your own private attorney at your own expense, if you so desire.

The Notice of Settlement is only a summary. In the event of a conflict or inconsistency between the Agreement and this Notice or the enclosed Claim Form, the terms of the Agreement will control. ***For more detailed information, you may review the Agreement, which contains the complete terms of the Settlement and is available at _____.***

**PLEASE DO NOT WRITE OR TELEPHONE THE COURT, FULTON, OR DEFENDANT'S COUNSEL FOR INFORMATION ABOUT THE SETTLEMENT OR THE LAWSUIT.**

Dated: _____

# **EXHIBIT D**

[INSERT ADMINISTRATOR'S LETTERHEAD]

[Name]
[Address]
[Address]

    RE: Your Settlement Payment Check for *Kress v. Fulton Bank, N.A.*

On [DATE], the United States District Court for the District of New Jersey granted final approval of the Settlement of the above-named lawsuit.

Your Settlement Payment check is now enclosed. **Please note that your check will automatically expire and become void in 180 days on _____, 20___**. Therefore, please cash or deposit your check AS SOON AS POSSIBLE. As explained to you in the Notice of Settlement you previously received, **if there is the language on the back of the enclosed check and you alter it or fail to sign your name on the "Endorsed:" line, the check will become void and payment of it will be rejected.**

Please contact us at the contact information below with any questions, or if you lose your Settlement Payment check and need to have it reissued. Thank you.

XXX
[INSERT ADDRESS]
[INSERT TELEPHONE NUMBER]
[INSERT EMAIL]

# **EXHIBIT E**

**[FRONT OF POSTCARD]**

[Name]
[Address]
[Address]

**[BACK OF POSTCARD]**

On DATE, we sent you a Settlement Payment check for the lawsuit titled *Kress v. Fulton Bank, N.A.* Our records indicate that you have not yet cashed or deposited that check.

**This notice is to remind you that the check will automatically expire on _____, 202_. Thus, please cash or deposit it AS SOON AS POSSIBLE.** Remember also that if there is language on the back of the enclosed check and you alter it or fail to sign your name on the "Endorsed:" line, the check will become void and payment of it will be rejected.

If you are unable to locate your Settlement Payment check, need a replacement check, or have other questions, please contact us by using the contact information below. Thank you.

XXX
[INSERT ADDRESS]
[INSERT TELEPHONE NUMBER]
[INSERT EMAIL]

# EXHIBIT F

**[INSERT ADMINISTRATOR'S LETTERHEAD]**

[Name]
[Address]
[Address]

RE: Your Voided Settlement Payment Check for *Kress v. Fulton Bank, N.A.*

On DATE, we sent you a Settlement Payment check in the above-named lawsuit. The deadline to cash or deposit your check was _____, 20__. Our records indicate that [insert whether check was not cashed/deposited or reason negotiation of check was rejected].

Your Settlement Payment check is on deposit at [INSERT]. You may claim your Settlement Payment by [INSERT HOW] on or before [DATE 60 DAYS AFTER ABOVE PASSED DEADLINE FOR NEGOTIATING CHECK].

If you have any questions, please contact the Administrator by using the contact information below. Thank you.

XXX
[INSERT ADDRESS]
[INSERT TELEPHONE NUMBER]
[INSERT EMAIL]

# EXHIBIT G

**[INSERT ADMINISTRATOR'S LETTERHEAD]**

[Name]
[Address]
[Address]

RE: Tax Forms for Your Settlement Payment in *Kress v. Fulton Bank, N.A.*

You were previously mailed a Settlement Payment check, and our records reflect that you cashed or deposited that check. Under the terms of the Settlement, 50% of your Settlement Payment constitutes wages subject to the withholding of all applicable local, state, and federal taxes. The other 50% constitutes non-wage income for interest, liquidated damages, and any statutory or civil penalties available under any applicable local, state, and federal laws. Accordingly, an IRS Form W-2 [and an IRS Form 1099] for your Settlement Payment are enclosed. You will need the Form[s] when you file your tax return for the period January 1, 202_ through December 31, 202_.

PLEASE NOTE THAT THIS LETTER DOES NOT CONSTITUTE TAX ADVICE AND YOU ARE EXPRESSLY INSTRUCTED TO OBTAIN YOUR OWN TAX ADVICE.

If you did not deposit or cash your Settlement Payment check and thus believe that you have received this letter and the enclosed tax form(s) in error, please contact the Administrator by using the contact information below.  Thank you.

XXX
[INSERT ADDRESS]
[INSERT TELEPHONE NUMBER]
[INSERT EMAIL]

# EXHIBIT H

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| D. Kress, *individually and on behalf of all those similarly situated*, | Civil Action No.: 1:19-cv-18985-CDJ-JS |
| Plaintiff, | **DECLARATION OF PETER SPERRY** |
| vs. | |
| FULTON BANK, N.A., | |
| Defendant. | |

## <u>DECLARATION OF PETER SPERRY</u>

I, Peter Sperry, declare as follows:


1.      I am a Project Manager for Epiq Class Action & Claims Solutions, Inc. ("Epiq").  I have over six years of experience handling all aspects of settlement administrations. The following statements are based on my personal knowledge and information provided by other Epiq employees, and if called on to do so, I could and would testify competently about these issues.

2.      Epiq is a nationally recognized leader in the field of class action administration, and since 1993 has administered thousands of settlements, including both federal and state cases. Examples of the cases administered by Epiq, including settlement values, volume of notices, and volume of claims are included as **Attachment 1**.

3.      Subject to the Court's approval, Epiq will perform the notice and administration duties as set forth in the Settlement Agreement.

4.      Based on reasonable assumptions, the cost to implement the Notice Plan and administer the Settlement is estimated to be $109,878.  This approximate cost encompasses mailed notice (including postage), undeliverable mail processing, address research, claims administration

1

(claims processing, website/phone support, and associated project management time) and distribution related expenses (checks and associated postage).  At this time Epiq has not agreed to fixed (minimum or capped) costs to handle the administration since final total costs are dependent upon variables such as the number of calls to the toll-free line, the number of claims submitted, the validity and completeness of those claim submissions, and the number of Settlement Collective Members and Participating Class Members sent a payment. Epiq's estimated costs are included as **Attachment 2**.

5.   I declare under penalty of perjury under the laws of the United States and the State of New Jersey that the foregoing is information true and correct.  Executed this 10th day of February at Seattle, WA.

PETER SPERRY

Attachment 1

# epiq reliability

Epiq Class Action and Claims Solutions CV



## Epiq Class Action and Claims Solutions CV

**Epiq is a leading class action settlement administrator delivering best-in-class people, technology and service for class action administration matters anywhere in the world— regardless of size or complexity.**

**History:**

Epiq has been administering settlements since 1993, including settlements of class actions, mass tort litigations, Securities and Exchange Commission enforcement actions, Federal Trade Commission disgorgement actions, insurance disputes, bankruptcies, and other major litigation. Epiq has administered thousands of settlements, including some of the largest and most complex cases ever settled.

Epiq's class action case administration services include coordination of all notice requirements, design of direct-mail notices, establishment and implementation of notice fulfillment services, coordination with the United States Postal Service ("USPS"), electronic noticing, notice website development and maintenance, dedicated phone lines with recorded information and/or live operators, receipt and processing of opt-outs, claims database management, claim adjudication (paper and electronic), funds management, and award calculations and distribution services (both traditional checks and electronic payments). Epiq works with the settling parties, the Court, and the Class Members in a neutral facilitation role to implement administration services based on the negotiated terms of a settlement.

Through Hilsoft Notifications, our global provider of legal noticing services, we provide superior notice plan design, implementation, oversight, and communications for class action, mass tort, and bankruptcy proceedings. Hilsoft Notifications has been retained by defendants and/or plaintiffs on more than 300 cases, including more than 30 MDL cases, with notices appearing in more than 53 languages and in almost every country, territory and dependency in the world.

Epiq also has a Mass Tort division, which offers claimant communication support, medical record retrieval and review, plaintiff fact sheet fulfillment, settlement document fulfillment, lien resolution and fund administration and payments.

**Strategically located:**

- 12 dedicated offices providing project management and operational support including, New York City, New York; Beaverton, Oregon; Lake Success, New York; Dublin, Ohio; Seattle, Washington; Tampa, Florida; Phoenix, Arizona; Tallahassee, Florida, London UK, Memphis TN and Ottawa and Waterloo, Ontario.

- 3 state-of-the-art full-service mail, print, and contact centers in Beaverton, Oregon, Memphis, TN and Dublin, Ohio.

- 2,670 contact center seats across all locations.



**Epiq has been retained on some of the highest profile cases in history:**

*In re: Payment Card Interchange Fee and Merchant Discount Antitrust Litigation* This $6B+ settlement is one of the largest antitrust class action settlements of all time. Epiq received roughly 80 billion rows of data with 163 types of data columns in 180 distinct files. The aggregated data set is over 110 terabytes and is hosted in a PCI-compliant environment. Over a five-month period this data was used to generate 21 million settlement notice mailings. This settlement is currently on appeal and therefore the claims process has not yet begun. However, in order to efficiently handle the anticipated claim volume, we implemented a pre-registration process that allows merchants to provide information to expedite the claims process prior to claim filing.

*In re: Oil Spill by the Rig "Deepwater Horizon"* Prior to settlement, Epiq acted as a shared database manager for the litigation, collecting data from plaintiffs' counsel, defense counsel, the Gulf Coast Claims Facility, and the court to create an aggregated system of record to manage all plaintiff data. Responsibilities included data intake and processing of all new forms filed on PACER and LexisNexis File & ServeXpress, loading partially complete data lists, identifying exceptions and mismatches and resolving missing data, duplicates and incorrect information for the parties. Epiq's legal noticing division, Hilsoft Notifications, was then appointed as the notice administrator for both the $7.8 billion economic damages and medical benefits settlements. Across a condensed six week period, Hilsoft ran notices nationally and locally in more than 2,000 print publications. Approximately 10,000 television and radio spots aired across 26 media markets stretching from Houston to Miami. In addition to English, notices appeared in Spanish and Vietnamese. It is estimated that more than 95% of all adults living in the Gulf Area and more than 83% of all adults in the United States had an opportunity to see the notice. In total, the notice effort was one of the largest ever undertaken in a class action settlement.

*In re: Takata Airbag Products Liability Litigation* Massive individual notice mailing to over 59 million class members with Toyota, Mazda, Subaru, BMW, Honda, Nissan and Ford vehicles, as part of $1.49 billion in multiple settlements regarding Takata airbags. Comprehensive nationwide media accompanied each phase, comprised of radio ads, consumer magazine ads and extensive online notice.

*In re: Volkswagen "Clean Diesel" Marketing, Sales Practices, and Product Liability Litigation (Bosch Settlement)* Comprehensive notice program within the Volkswagen Emissions Litigation that provided individual notice to more than 946,000 vehicle owners via first class mail and to more than 855,000 via email. A targeted internet campaign further enhanced the notice effort.

*Hale v. State Farm Mutual Automobile Insurance Company* For a $250 million settlement with approximately 4.7 million class members, Epiq designed and implemented a Notice Program with individual notice via postcard or email to approximately 1.43 million class members and a robust publication program, which combined, reached approximately 80% of all U.S. Adults Aged 35+ approximately 2.4 times each.

*Oppenheimer Rochester Group Funds Securities Litigation* In these securities cases, which combine six separate settlements, Epiq reviewed and processed over 10 million trade transactions, consolidated data and mailed more than 450,000 pre-populated records of claimant transactions ("ROFTS") to alleviate the burden on the majority of class members to research and file claims, and mailed over 180,000 additional Claim Forms and notices. We created complex software code to calculate the recognized losses across 19 different types of securities.

*In re Merck & Co., Inc. Securities, Derivative & "ERISA" Litigation ('Vioxx')* Epiq is currently administering this $1.062 billion settlement involving damages from securities trades going as far back as 1999. Epiq mailed almost 2 million notices, received more than 400,000 claims and processed millions of lines of securities transaction data, determined losses using complex algorithms relating to multiple securities for injured investors.

3



*Hooker v SiriusXM Radio Inc.*  This $35 million settlement for alleged TCPA violations involves approximately 12 million class members. Class members could register for three months of free service or file a claim for cash payment. Epiq's class member outreach included both mailing approximately 8 million postcards and a total of 50 million emails to class members for noticing and reminder purposes. The claims administration process involved working with the defendant to validate claims data using the defendant's internal database.

*The Shane Group, Inc. v Blue Cross Blue Shield of Michigan* Epiq is the claims administrator for this 3 million class member insurance anti-trust settlement. Epiq utilized its proprietary Third-Party Payor (TPP) database to notice insurance companies and other third party payors in addition to the individual class members provided by the defendant. The claims process was complex and involved sensitive HIPAA protected data that had to be housed in a custom secure environment. The settlement was appealed and as a result the parties are currently finalizing alterations to the settlement to address the concerns of the appellant.

*In re Checking Account Overdraft Litigation* Epiq has implemented more In re: Checking Account Overdraft MDL NO. 2036 overdraft class action settlements than any other administrator and is currently providing settlement services to five of the six largest U.S. banks. Our ability to securely intake and normalize complex data from a multitude of sources proves a natural fit for banks and other financial services firms.

*Mortgage Servicing Regulatory Settlement Summary*  Epiq is currently handling a number of remediation and distribution programs involving various financial institutions pursuant to private settlements and consent orders with the OCC, DOJ, FRB and CFPB. Examples of these engagements include:

   • A borrower identification and distribution program to support a $35 million Department of Justice (DOJ) and Consumer Financial Protection Bureau (CFPB) settlement with a financial institution related to mortgage loans made to African-American and Hispanic borrowers.

   • A payment distribution program to support an expedited payment agreement between the Office of the Comptroller of the Currency (OCC) and a financial institution, which resolves an Independent Foreclosure Review of the financial institution's foreclosure practices.

   • A notification, claims and distribution program to support a Federal Reserve settlement with a financial institution related to mortgage loans originated at more than 800 branch offices.

   • A notification, claims and distribution program to support a $320 million Home Affordable Modification Program (HAMP) settlement between the DOJ and a financial institution.



## Experience in major projects by dollar value (values have been rounded)

| | | | | | |
|---|---|---|---|---|---|
| **$44.5B** | Lehman Brothers Holding Inc | **$1.9B** | 1983 Marine Barrack's Bombings | **$480M** | Wells Fargo Securities Litigation |
| **$11B** | Deepwater Horizon Economic Settlement | **$1.3B** | Hispanic Women and Farmers | **$473M** | Schering Securities Litigation |
| **$8.5B** | BNY Mellon Countrywide RMBS | **$1B** | In re Merck & Co Inc. Securities Derivative & ERISA Litigation | **$389M** | Royal Dutch Shell |
| **$6.15B** | WorldCom Securities | **$860M** | Johnson & Johnson Acuvue | **$384M** | Wells Fargo CPI |
| **$5.5B** | In Re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation | **$853M** | Air Cargo Antitrust | **$328M** | In re Volkswagen "Clean Diesel" (Bosch Settlement) |
| **$4.6B** | Indian Residential Schools Settlement | **$850M** | Marsh & McLennan | **$325M** | Precision v. PWT ('Freight Forwarders') |
| **$4.5B** | Bank of America Auction Rate Securities | **$845M** | In re Urethane Antitrust | **$320M** | SunTrust HAMP |
| **$4.5B** | JP Morgan Chase RMBS | **$834M** | Tremont Securities | **$299M** | Takata Ford |
| **$3.4B** | Indian Trust | **$800M** | Engle Trust Fund | **$231M** | US Embassy Bombings |
| **$3.2B** | Tyco Securities | **$758M** | In re Hyundai and Kia Engine Litigation | **$228M** | Hall v Bank of America |
| **$3.05B** | VisaCheck/Mastermoney Antitrust | **$750M** | Washington Public Power Supply Systems | **$219M** | Genworth Securities Litigation |
| **$3B** | Petrobras Securities Litigation | **$750M** | Bristol Myers Securities | **$215M** | Merck Securities Litigation |
| **$2.6B** | Morgan Stanley RMBS | **$730M** | United States v. Pokerstars | **$212M** | Wells Fargo Financial Consent Order |
| **$2.43B** | Bank of America Corp. Securities Derivative & ERISA | **$590M** | Klein, et al. v. Bain Capital Partners LLC, et al. | **$210M** | In re Wilmington Trust Securities Litigation |
| **$2.1B** | The Hepatitis C Tainted Blood Transfusion Settlements | **$520M** | Jessica S. Cook v. Santee Cooper et al | **$210M** | Salix Securities Litigation |
| **$2B** | In re Foreign Exchange Benchmark Rates Antitrust Litigation | **$504M** | ISDAfix Antitrust Settlement | **$200M** | In re Fresenius Granuflo/Naturalyte Dialysate Products Liability Litigation |
| **$1.2B** | Black Farmers Discrimination Litigation | **$504M** | Bank of NY Mellon Forex | **$200M** | In re New England Compounding Pharmacy Inc. Products Liability Litigation |
| **$1.10B** | Royal Ahold Securities | **$480M** | Gary Hefler, et al. v. Wells Fargo & Co. et al. | **$200M** | NECC Victims Compensation Program |

5



## By notices disseminated (values have been rounded)

| | | |
|---|---|---|
| 116,000,000 Ticketmaster.com | 11,000,000 Premera Data Breach Settlement | 4,600,000 1-800-Flowers Retail |
| 57,000,000 Classmates.com | 9,000,000 Pelayo v. Mexico Money Transfer | 4,500,000 Progressive Group Auto Insurance |
| 55,000,000 Hooker v Sirius XM Radio | 9,000,000 Farrell v Bank of America | 4,300,000 Chimeno-Buzzi v Hollister |
| 53,000,000 Takata Settlement | 9,000,000 Precision v PWT | 4,100,000 Amex Merchant Settlement |
| 32,000,000 Justice Stores-McGladrey | 8,400,000 Air Passenger Settlement | 4,000,000 WorldCom Securities |
| 26,000,000 VisaCheck/MasterMoney Antitrust | 8,300,000 Takata Ford | 3,900,000 Scharfstein v BP WCP |
| 25,000,000 IPO Securities | 8,300,000 Marolda v Symantec | 3,800,000 Clark v TransUnion |
| 22,000,000 McKnight v Uber | 8,300,000 Bank of America TCPA | 3,700,000 Fifth Third Overdraft Settlement |
| 21,000,000 Interchange | 8,000,000 Meckstroth v Toyota Motor | 3,700,000 Tennille v Western Union |
| 20,500,000 Nwabueza v. AT&T | 7,600,000 Vergara v. Uber TCPA Settlement | 3,600,000 Bodnar v BofA |
| 20,000,000 Webloyalty.com, Inc. | 7,600,000 MFS Sub-Track Mutual Fund | 3,500,000 Pfizer Securities Litigation |
| 19,000,000 Interchange | 7,100,000 TD Bank Debit Card Overdraft | 3,500,000 IDE - UCLA Health |
| 18,000,000 Western Union Money Transfer | 7,000,000 Community Hlth Sys DB | 3,500,000 Bosch Settlement |
| 16,000,000 Khoday v. Symantec | 7,000,000 Time Warner Entertainment Company | 3,500,000 Wells Fargo CPI Class Action |
| 15,140,000 Experian Information Solutions, Inc. | 7,000,000 AT&T Wireless | 3,500,000 Michael Kors Administration |
| 15,000,000 Farag v Kiip | 7,000,000 Equifax Consumer Services, Inc. | 3,400,000 Lucero v SolarCity TCPA Settlement |
| 15,000,000 Browning v. Yahoo! | 6,400,000 UCLA Health Data Breach Settlement | 3,300,000 Snyder v Ocwen Loan Servicing |
| 15,000,000 JP Morgan TCPA | 6,400,000 Angies List | 3,200,000 Hale v. State Farm |
| 14,000,000 Living Social | 5,700,000 Moore v Verizon | 3,000,000 McKinney-Drobnis v Massage Envy |
| 14,000,000 Sallie Mae | 5,000,000 Mohan v. Dell | 3,000,000 Amgen Securities Litigation |
| 13,000,000 Expedia Hotel Taxes and Fees | 5,000,000 Moneygram – Mexico Money Transfer | |



## By claims processed (values have been rounded)

| | | |
|---|---|---|
| 4,300,000 Lease Oil Antitrust | 670,000 Citigroup Inc. Securities | 298,000 Snyder v Ocwen Loan Servicing |
| 2,100,000 Strong Sub-Track Mutual Fund | 618,000 TransUnion | 275,000 TD Bank Debit Card Overdraft |
| 1,960,000 Wolf v. Red Bull | 607,000 Justice Stores-McGladrey | 268,000 Merck Securities Litigation |
| 1,200,000 Baby Products Antitrust | 601,000 Dell Fair Fund | 264,000 Carnegie v HR Block |
| 1,051,000 Takata Settlement | 600,000 Global Crossing Securities | 256,000 Mohan v. Dell |
| 1,000,000 AMEX Financial Advisors Securities | 521,000 Expedia Hotel Taxes and Fees | 250,000 Hill v State Street |
| 995,000 Daniels v. Allstate | 520,000 SEC v AIG | 240,000 Toronto-Dominion Securities Litigation Settlement |
| 980,000 WorldCom Securities | 500,000 Nortel Networks (I & II) Securities | 236,000 Bank of America TCPA |
| 950,000 Gulf Coast Claims Facility | 438,000 General Motors Securities Litigation | 231,000 Apple Securities Litigation |
| 880,000 Premera Data Breach Settlement | 425,000 Amgen Securities Litigation | 227,000 Purex Settlement |
| 815,000 Progressive Fair Credit Reporting Act | 414,000 Merck Vioxx Securities Litigation | 206,000 Trombley v National City |
| 815,000 VisaCheck/MasterMoney Antitrust | 396,000 Zepeda v. PayPal | 196,000 Marchese v Cablevision |
| 760,000 Oppenheimer Funds Securities | 394,000 Moore v Verizon | 195,000 Toyota Securities Litigation |
| 724,000 Wells Fargo Securities | 389,000 Reynolds v Hartford | 194,000 SEC v Raytheon |
| 719,000 Bank of America Corp. Securities Derivative & ERISA | 357,000 BNYM Forex Securities Litigation | 182,000 Ridgely v FEMA |
| 700,000 Lucent Technologies, Inc. Securities | 325,000 Hooker v Sirius XM Radio | 179,000 Royal Dutch Shell |
| 698,000 Classmates.com | 324,000 Air Passenger Settlement | 178,000 Angies List |
| 685,000 Deloris Kline v. Progressive Corporation | 313,000 Cerbo v Ford of Englewood, Inc. | 148,000 UCLA Health Data Breach Settlement |
| 672,000 Oppenheimer Rochester Fund Securities Litigation | 303,000 Wright et al v Nationstar Mort | 144,000 Tennille v Western Union |

Attachment 2

**epiq**

# Kress v Fulton Bank FLSA Revised

## Project Requirements and Estimated Volumes

| | |
|---|---|
| Notice Population | 2,044 |
| Percentage of Undeliverables | 20% |
| Toll-Free Phone with IVR | Yes |
| Contact Center Agent Support | No |
| Informational Website | Yes |
| Claim Response Percentage | 60% |
| Estimated Claims Received | 1,426 |
| Case Duration (Months) | 9 |
| States of Residency for Wage Reporting | 5 |
| Mailing Packet Content | 8-image Notice w/ 2-image Claim Form |
| Mailing Packet Format | Inserted into a Windowed Envelope |

## Summary Estimate

| | | |
|---|---|---|
| Data Standardization and Class Notice | $ | 13,452 |
| Project Management and Reporting | $ | 33,700 |
| Contact Center and Website Hosting | $ | 12,563 |
| Claims Processing and Claimant Support | $ | 19,387 |
| Distribution and Fund Management | $ | 24,979 |
| Postage and Expenses | $ | 5,797 |
| Total Estimate | $ | 109,878 |