[Doc. No. 31]

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

| | |
|---|---|
| **D. KRESS, individually and on behalf of those similarly situated,** | |
| **Plaintiffs,** | **Civil No. 19-18985 (CDJ)(MJS)** |
| **v.** | |
| **FULTON BANK, N.A.,** | |
| **Defendant.** | |

**R E P O R T   &   R E C O M M E N D A T I O N**

This matter is before the Court on plaintiff's unopposed "Motion for Preliminary Approval of Class and Collective Settlement and Provisional Certification of Settlement Class and Collective" [Doc. No. 31] ("Motion"). Plaintiff's Motion seeks an order (1) granting Preliminary Approval of the Settlement Agreement and Release; (2) provisionally certifying the Settlement Collective under Section 216(b) of the Fair Labor Standards Act for the purposes of effectuating the settlement; (3) provisionally certifying the Settlement Class under Federal Rule of Civil Procedure 23(a) and 23(b)(3) for purposes of effectuating the settlement; (4) appointing Swartz Swidler, LLC as Class Counsel; (5) appointing Named Plaintiff Kress as Class Representative; (6) appointing Epiq as the Administrator of the settlement; (7)

1

approving the proposed Notices of Settlement and Claim Form and directing their distribution in accordance with the Settlement Agreement; (8) approving the language of Claim Form and Check Opt-In Form as sufficient under 29 U.S.C. § 216(b) to constitute consent to join the lawsuit for settlement purposes only and to release the Released Claims; and (9) scheduling a Final Settlement Fairness Hearing. Pursuant to Fed. R. Civ. P. 78 and Local Civ. R. 78.1(b), the Court makes this Report and Recommendation without oral argument from the parties. This Report and Recommendation is issued pursuant to 28 U.S.C. § 636(b)(1).

## Background

Named Plaintiff Desiree Kress ("Named Plaintiff") filed the complaint in this action on October 15, 2019 asserting class claims against defendant Fulton Bank, N.A. ("Fulton") for unpaid overtime wages under the Fair Labor Standards Act ("FLSA") and the New Jersey Wage and Hour Law ("NJWHL") and for unpaid straight-time wages under the New Jersey Payment Law ("NJWPL") and the New Jersey common law of quantum meruit/unjust enrichment. See Doc. No. 1 ("Complaint").

On the FLSA claims, Named Plaintiff alleged an "opt-in" collective action under 29 U.S.C. § 216(b). See Knepper v. Rite Aid Corp., 675 F.3d 249, 258–59 (3d Cir. 2012). On the state-law claims, Named Plaintiff pursued a damages class action under

Federal Rule of Civil Procedure 23(b)(3). The case proceeded along two tracks: one under the collective-action provisions of the FLSA, and the other under the class-action procedures of Rule 23. The Third Circuit has endorsed this dual-track procedure, which is used widely to pursue wage-and-hour cases in federal court simultaneously under federal and state law. See Verma v. 3001 Castor, Inc., 937 F.3d 221, 225-26 (3d Cir. 2019).

Named Plaintiff's Complaint specifically alleges that Fulton failed to pay hourly employees for time spent performing procedures to open Fulton's retail bank branches for business each day. Compl. at ¶ 56. According to the Complaint, pursuant to Fulton's policies and procedures, employees assigned to open the bank, including plaintiffs, are/were required to engage in significant pre-shift security procedures, both inside and outside the building, prior to being permitted to clock-in. The Complaint further alleges that once the security procedures are completed, plaintiffs are/were required to turn on their computer, wait for the computer to boot-up, open the internet homepage, wait for the timekeeping webpage to load, log into the timekeeping webpage, which permitted/permits them to clock-in, and then clock-in. Id. at ¶ 57.

As defined in the Settlement Agreement and Release, the Settlement Class is comprised of "all current and former Full-Time Employees who have worked for Fulton Bank, N.A. in New Jersey, or

Fulton Bank of New Jersey, at any time from August 9, 2017 through September 1, 2020 (the "Relevant Period") in a retail banking branch in one or more Covered Positions." <u>See</u> Br. in Supp., Exhibit 1, Settlement Agreement and Release [Doc. No. 31-3] at 5. "'Covered Positions' means the following hourly-paid positions, including those with a designation of senior, floating, or bilingual: teller, teller supervisor/head teller, customer service representative, customer service representative supervisor, assistant branch manager, financial center supervisor, universal banker, or sales and service specialist." <u>Id.</u> at 2.

During the course of this litigation the parties conducted informal discovery. <u>See</u> Br. in Supp. at 2.

> Specifically, Fulton produced a substantial sample of branch employees' time and pay records (i.e., the records for the individuals employed at 20% of Fulton's branches), written policies regarding its opening procedures and time-keeping systems, and Plaintiff's and Opt-in Plaintiff Stephens' pay and time records. Plaintiff and Opt-in Plaintiff Stephens provided information regarding their experience performing the opening procedures and documents related to when they performed same. Through this exchange of information, the Parties' counsel investigated the facts relating to the alleged claims and developed models for calculating class-wide damages.

<u>Id.</u> at 2-3.

After engaging in negotiations supervised by former United States Magistrate Judge Joel Schneider, the parties reached a settlement agreement -- the preliminary approval of which is the

subject of the present Motion. The proposed settlement[1] terms, as set forth in Plaintiff's brief, are as follows[2]:

1. Fulton will pay the Maximum Settlement Amount of $1,000,000 into a Qualified Settlement Fund to be distributed to members of the Rule 23 class action and FLSA collective action (which should be provisionally certified for purposes of settlement only), subject to the formula described below. (Settlement Agreement, ¶ 56.) Fulton will wire the Maximum Settlement Amount to the Qualified Settlement Fund on the first business day following the Effective Date, which is thirty-five (35) calendar days after the last of the following occurs: (a) the Court's Final Approval Order and judgment approving the Settlement Agreement is entered on the docket, (b) the case is dismissed with prejudice and with all rights of appeal waived, or (c) any appeal of the Court's Final Approval Order and judgment is fully and finally resolved by affirming final approval of the Agreement in its entirety with no further right of appeal or review. (Settlement Agreement, ¶¶ 11, 72.)

2. The Agreement defines the Settlement Class as including all current and former employees who are designated as full-time in Defendant's Human Resources system known as Ultipro ("Full-Time Employees") and who have worked for Fulton Bank, N.A. in New Jersey, or Fulton Bank of New Jersey, at any time from August 9, 2017 through September 1, 2020 (the "Relevant Period") in a retail banking branch in one or more of the following hourly-paid positions, including those with a designation of senior, floating, or bilingual: teller, teller supervisor/head teller, customer service representative, customer service representative supervisor, assistant branch manager, financial center supervisor, universal banker, or

---

[1] Unless otherwise defined, all terms used in this Report & Recommendation shall have the same meanings as defined in the Settlement Agreement and Release. See Br. in Supp., Exhibit 1, Settlement Agreement and Release [Doc. No. 31-3].

[2] The full Settlement Agreement and Release are attached as Exhibit 1 to the Plaintiff's unopposed motion [Doc. No. 31-3].

5

sales and service specialist (the "Covered Positions"). (Settlement Agreement ¶¶ 9, 16, 39.)

3. The Agreement defines the Settlement Collective as including all current and former Full-Time Employees who have worked for Fulton Bank, N.A. or any bank which merged into Fulton Bank, N.A., at any time during the Relevant Period in a retail banking branch in one or more Covered Positions. (Settlement Agreement ¶¶ 9, 16, 41.)

4. Subject to the approval of the Court, each Settlement Collective Member and Settlement Class Member will be fully advised of the settlement pursuant to the Notices of Settlement attached as Exhibits B and C to the Agreement, which will be sent by the Administrator by U.S. First Class Mail. (Settlement Agreement ¶ 79-83) To provide the best notice practicable, before mailing the Notices of Settlement, the Administrator will take reasonable efforts to identify current addresses for Settlement Collective Members and Settlement Class Members through the U.S. Post Office's National Change of Address Database. (Settlement Agreement ¶ 76(b).) If any Mailing Packets are returned as undeliverable, the Administrator will conduct Skip Tracing to identify alternative mailing addresses and re-mail the returned Mailing Packets. (Settlement Agreement ¶¶ 47, 76(c).) The Claim Form enclosed with the Settlement Notices (and attached as Exhibit A to the Agreement) will advise each Settlement Collective Member and Settlement Class Member of the number of Qualifying Workweeks that will be used to calculate the pro rata portion of that individual's Settlement Payment. (Settlement Agreement, Ex. A, Claim Form.)

5. Settlement Collective Members and Settlement Class Members may submit their Claim Forms via facsimile, e-mail, U.S. Mail, or through the Settlement Website. (Settlement Agreement ¶ 84, Ex. A, Claim Form.)

6. Settlement Collective Members and Settlement Class Members who submit a timely and valid Claim Form will, in doing so, consent to join the lawsuit for settlement purposes only under 29 U.S.C. § 216(b) and release the Released Claims, provided that the Agreement is

finally approved by the Court. (Settlement Agreement, Ex. A.)

7. Settlement Class Members who do not opt out of the settlement by submitting a timely and valid Request for Exclusion will be deemed Participating Class Members and will receive a Settlement Payment and release the Released Claims, irrespective of whether they submit a timely and valid Claim Form. (Settlement Agreement ¶ 24, 44-45, 61, 74.)

8. Settlement Collective Members will receive a Settlement Payment, irrespective of whether they submit a timely and valid Claim Form. The backs of the settlement checks issued to Settlement Collective Members who do not become Claimants and who are not also Settlement Class Members will include Check Opt-In Form language. (Settlement Agreement ¶¶ 44, 61, 96-97.) If the settlement check is signed and cashed or otherwise negotiated, the Check Opt-In Form language will operate as a consent to join the lawsuit for settlement purposes only under 29 U.S.C. § 216(b) and a release of the Released Claims. (Settlement Agreement ¶¶ 74, 96-99.) The Reverse Positive Pay Process described in the Agreement will be used to confirm that the Check Opt-In Form language has not been altered and has been signed and thus that the Settlement Payment should be honored.

9. A Settlement Participant's Settlement Payment will be a flat sum of $125 ("Minimum Payment") plus a pro rata share of the Residual Net Settlement Amount. (Settlement Agreement, ¶ 61.) Each Settlement Participant's pro rata share will be calculated based on the number of full and partial workweeks he or she worked during the Relevant Period as a Full- Time Employee in a Covered Position as reflected in Fulton's time records and Human Resources records. (Id.) Paid time off and leaves of absence do not count as worktime for purposes of counting weeks worked.

10. Fifty percent (50%) of the Settlement Payment to each Settlement Participant shall be considered wages subject to withholding of all applicable local, state, and federal taxes, and the other fifty percent (50%) shall be considered non-wages for the settlement of

interest claims, liquidated and/or multiple damages, and any statutory or civil penalties available under any applicable local, state, and federal laws. (Settlement Agreement, ¶¶ 65-66.)

11. The Parties will engage a third-party settlement administrator to administer the notice, allocation, and distribution of the Qualified Settlement Fund, and who will report periodically to counsel for Plaintiff and Fulton and whose fees will be paid from the Qualified Settlement Fund. (Settlement Agreement, ¶ 1, 76, 78.) The Parties propose in the Agreement using Epiq as the Administrator. Filed herewith as Exhibit H is a Declaration of Peter Sperry on behalf of Epiq, which includes a detailed estimate of Epiq's fees and costs for performing all tasks and duties described in the Agreement.

12. All of the Administrator's fees and costs associated with the settlement, all of Plaintiff's Counsel's fees and costs incurred in this lawsuit and its settlement, all payments to Settlement Participants, the service payments to Plaintiffs, and all Settlement Participants' and Plaintiffs' share of payroll taxes on their Settlement Payments and the service payments will be paid from the $1,000,000 Maximum Settlement Amount. Only the employer's portion of payroll taxes owed on the W2 back wage payments is excluded from the Maximum Settlement Amount.

13. No later than sixty days after the end of the Second Check Cashing Period, the Administrator shall remit to Fulton the amounts of uncashed Settlement Payment checks with Check Opt-In Form language on them plus any taxes paid in connection with those uncashed checks. If any of the checks issued to Claimants or Participating Class Members are not cashed or otherwise negotiated by the conclusion of the Second Check Cashing Period, the Administrator will pay the amounts of those uncashed checks, as well as any unused portion of the Reserve Amount, to the charitable organization approved by the Court in its final approval order.

14. The settlement provides for a full and final release and waiver of any and all claims for payment of wages or other compensation, damages, fees, and

> 401(k) or other retirement benefits for the performance of opening and closing procedures from August 9, 2017 through the Effective Date.3 (Settlement Agreement, ¶ 74.)

## Discussion

### I.   Provisional Certification of the Settlement Class

Before considering the fairness of the settlement, the Court must determine whether the proposed settlement class may be provisionally certified for the purposes of settlement. "Rule 23 of the Federal Rules of Civil Procedure allows this Court to certify a class for settlement purposes only." Atis v. Freedom Mortg. Corp., No. CV 15-03424, 2018 WL 5801544, at *5 (D.N.J. Nov. 6, 2018) (quoting Chemi v. Champion Mortg., No. 05-cv-1238, 2009 WL 1470429, at *6 (D.N.J. May 26, 2009) (internal quotations omitted). As an initial matter, the Court notes that no objections have been raised with respect to class certification for the purpose of settlement. Nevertheless, the Court must conduct the two-step analysis prescribed by Rule 23 to determine whether to certify the class. Fed. R. Civ. P. 23; see Steinberg v. Sorensen, No. 00-6041, 2016 WL 3381242, at *3.

For a settlement class to be certified, a class must satisfy the requirements of Rule 23. Rule 23 contains two sets of requirements. Rule 23(a) first ensures that "the named plaintiffs are appropriate representatives of the class whose claims they

wish to litigate." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 349, 131 S. Ct. 2541, 2550, 180 L. Ed. 2d 374 (2011). Rule 23(a) sets out four prerequisites to certification of a class, all of which must be met: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions, 148 F.3d 283, 308-09 (3d Cir. 1998). "If the Rule 23(a) criteria are satisfied, the Court must also find that the class fits within one of the three categories of class actions defined in Rule 23(b)." Id. at 309. In this instance the parties seek to certify the class under the predominance and superiority requirements of Rule 23(b)(3). Br. at 12.

### a. Rule 23(a)

The Court finds that the Rule 23(a) criteria -- numerosity, commonality, typicality, and adequacy of representation -- are satisfied.

### i.   Numerosity

First, the class must be so numerous "that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). While no minimum number of plaintiffs is required to maintain a suit as a class action, the Third Circuit has held that "generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met."

Stewart v. Abraham, 275 F.3d 220, 226-27 (3d Cir. 2001) Here,
Fulton has identified approximately 2,044 employees who meet the
definitions of the proposed Settlement Class and/or Settlement
Collective. The Court is therefore satisfied that the proposed
Settlement Class is sufficiently numerous and that joinder would
be impracticable.

### ii.  Commonality

Rule 23(a) requires "questions of law or fact common to the
class." Fed. R. Civ. P. 23(a)(2). "Commonality requires the
plaintiff to demonstrate that the class members have suffered the
same injury[]" and that their claims "depend upon a common
contention" that "is capable of classwide resolution." Wal-Mart
Stores, Inc., 564 U.S. at 350 (internal quotations omitted). The
contention is capable of "classwide resolution" if the
"determination of its truth or falsity will resolve an issue that
is central to the validity of each one of the claims in one stroke."
Id. at 2545; see also In re NFL Players' Concussion Injury Litig.,
307 F.R.D. 351, 371 (E.D. Pa. 2015) ("The [commonality] standard
is not stringent; only one common question is required.") aff'd,
821 F.3d 410 (3d Cir. 2016).

Here, the issues underlying the claims are common to all
Settlement Class Members. Factually, Named Plaintiff and all
Settlement Class Members would have to prove that Fulton had a

policy or practice not to pay its hourly branch employees for time purportedly spent performing opening procedures prior to clocking in each day. The common legal question underlying the class claims is whether Fulton violated wage-and-hour law by its alleged policy or practice.[3] Since plaintiff shares at least one question of fact or law with the grievances of the prospective class, the commonality requirement is satisfied. See Baby Neal v. Casey, 43 F.3d 48, 56 (3d Cir. 1994) ("The commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class.")

### iii. Typicality

Rule Procedure 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class[.]" Fed. R. Civ. P. 23(a)(3). "The typicality requirement is designed to align the interests of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals." In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 531 (3d Cir.

---

[3] Courts regularly find commonality in similar wage and hour suits in which class certification is sought. See, e.g., Bernhard v. TD Bank, N.A., No. 08-4392, 2009 WL 3233541, at *3 (D.N.J. Oct. 5, 2009); In re Janney Montgomery Scott LLC Fin. Consultant Litig., No. 06-3202, 2009 WL 2137224, at *4 (E.D.Pa. July 16, 2009); Lenahan v. Sears Roebuck and Co., No. 02-0045, 2006 WL 2085282, at *7 (D.N.J. July 24, 2006); Bredbenner v. Liberty Travel, Inc., No. CIV.A. 09-1248, 2011 WL 1344745, at *6 (D.N.J. Apr. 8, 2011).

2004)(internal quotations omitted). "The typicality criterion is intended to preclude certification of those cases where the legal theories of the named plaintiffs potentially conflict with those of the absentees by requiring that the common claims are comparably central to the claims of the named plaintiffs as to the claims of the absentees." Baby Neal, 43 F.3d at 57. "However, typicality, as with commonality, does not require that all putative class members share identical claims." Warfarin, 391 F.3d at 531-32. "Indeed, even relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories." Baby Neal, 43 F.3d at 58 (citing De La Fuente v. Stokely-Van Camp, Inc., 713 F.2d 225, 232 (7th Cir.1983)).

Here, the claims of Named Plaintiff and the Settlement Class Members' claims are alleged to have arisen out of the same violative policy or practice -- specifically, the alleged failure of Fulton to pay its hourly branch employees for time purportedly spent performing opening procedures prior to clocking in each day. Since there is a "strong similarity of legal theories," the typicality requirement is satisfied. Baby Neal, 43 F.3d at 58.

### iv.  Adequacy of Representation

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement "has two components designed to

ensure that absentees' interests are fully pursued." Warfarin, 391 F.3d at 532 (citing Georgine v. Amchem Prods., Inc., 83 F.3d 610, 630 (3d Cir. 1996), aff'd, Amchem, 521 U.S. at 591, 117 S. Ct. 2231) (internal citations omitted). The first component is the "adequacy inquiry." Id. "[T]he adequacy inquiry tests the qualifications of the counsel to represent the class." Id. (quoting Prudential, 148 F.3d 283, 299 (3d Cir. 1998) (internal quotations omitted); see also In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig., 55 F.3d 768, 801 (3d Cir. 1995) ("Courts examining settlement classes have emphasized the special need to assure that class counsel: (1) possessed adequate experience; (2) vigorously prosecuted the action; and (3) acted at arm's length from the defendant.").

Here, the firm of Class Counsel has served as counsel in more than one hundred and thirty (130) federal or state putative class and/or collective action lawsuits, thirty-three (33) of which have been certified as Rule 23 (or analogous state court rule) class actions and/or conditionally certified as FLSA collective actions. See Declaration of Matthew D. Miller, Esq. (Miller Decl.) ¶ 5 [Doc. No. 31-3]. Thus, the Court finds that Class Counsel is qualified to represent the interests of the class and, moreover, respectfully recommends the firm's appointment as Class Counsel, as requested in Named Plaintiff's motion.

The second component of Rule 23(a)(4) requires the Court to "uncover conflicts of interest between named parties and the class they seek to represent." Warfarin, 391 F.3d at 532 (quoting Prudential, 148 F.3d at 299 (internal quotations omitted). This inquiry tends to merge with the "typicality" inquiry above because "both look to potential conflicts and to whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." Beck v. Maximus, 457 F.3d 291, 296, (3d Cir. 2006) (quoting Amchem Products, Inc. v. Windsor, 521 U.S. 591, 625, 117 S. Ct. 2231, 138 L.Ed.2d 689 (1997) (internal quotations omitted).

Here, the Court cannot discern any conflict of interest between Named Plaintiff and the class she seeks to represent that would preclude class certification in this case. Thus, the adequacy of representation requirement is satisfied for the purpose of the instant motion seeking provisional certification of the Settlement Class under Rule 23.

### b. Rule 23(b)(3): Predominance & Superiority

If the Rule 23(a) criteria are satisfied, the Court must also find that the class fits within one of the three categories of class actions defined in Rule 23(b). In this instance, the parties

seek to certify the class under the predominance and superiority requirements of Rule 23(b)(3). Br. in Supp. at 12.

To certify a class under Rule 23(b)(3), the Court must find that: "[T]he questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). These "twin requirements of Rule 23(b)(3) are known as predominance and superiority." In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305, 310 (3d Cir. 2008). The factors pertinent to this inquiry include (1) the interests of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against the members of the class; (3) the desirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in management of a class action. See Fed. R. Civ. P. 23(b)(3)(A)-(D).

### i.  Predominance

"Parallel with Rule 23(a)(2)'s commonality element, which provides that a proposed class must share a common question of law or fact, Rule 23(b)(3)'s predominance requirement imposes a more rigorous obligation upon a reviewing court to ensure that issues

common to the class predominate over those affecting only individual class members." Sullivan v. DB Investments, Inc., 667 F.3d 273, 297 (3d Cir. 2011) (en banc) (citing In re Ins. Brokerage Antitrust Litig., 579 F.3d 241, 266 (3d Cir.2009). The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Amchem Prods., Inc., 521 U.S. at 623 (1997). "[T]he focus of the predominance inquiry is on whether the defendant's conduct was common as to all of the class members, and whether all of the class members were harmed by the defendant's conduct." Sullivan, 667 F.3d at 298.

Here, the Court concludes that the predominance requirement is satisfied because whether Fulton had a policy or practice not to pay its hourly branch employees for time purportedly spent performing opening procedures prior to clocking in each day lies at the core of the asserted claims. Fulton's alleged conduct in this regard is common to all Settlement Class Members as each is alleged to have been harmed in the same way.[4] This common question

---

[4] At this stage, beyond Named Plaintiff's reference to assertions apparently raised as defenses by Fulton (see Br. in Supp. at 20), no information has been presented to suggest that (1) Fulton's branches were not governed under the same policies and/or procedures; (2) Fulton was unaware that individual branches were engaging in allegedly violative practices such that uncompensated work activities were permitted to occur at the corporate level; or (3) that there exist or existed significant differences in the factual and employment settings of individual Settlement Class members. However, if necessary, the Court may wish to later conduct

shared by all class members predominates over any factual variation in the claims of individual employees, such as the amount of time worked without compensation.[5] Accordingly, it can be reasonably "distill[ed] that each class member shares a similar legal question" arising from whether Fulton's policy or practice was violative of the same wage-and-hour laws. See <u>Sullivan</u>, 667 F.3d at 300. The predominance requirement is, therefore, met.

### ii. Superiority

The superiority requirement of Rule 23(b)(3) "'asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication.'" <u>Warfarin</u>, 391 F.3d at 533-34 (quoting <u>Prudential</u>, 148 F.3d at 316). Class litigation is superior to other methods of adjudication when it would "not be practicable . . . to undertake the individualized inquiries necessary for the potential claims[.]" <u>Merlo v. Fed. Express Corp.</u>, No. 07-4311, 2010 WL 2326577, at *8 (D.N.J. June 7, 2010).

---

a hearing to more closely examine the issues pending final approval.

[5] Variations in the amount of time worked without compensation implicates damages, not the nature or legal basis of class claims, and is accounted for in the formula set forth in the Settlement Agreement and Release to be applied for calculating each Settlement Collective Member's and Class Member's Settlement Payment.

Named Plaintiff has alleged that the amount at stake for individual putative class members may not be great enough to enable all the individual putative class members to maintain separate actions against Fulton. Compl. at ¶ 22. Because litigation could exceed the amount of any potential recovery, individual plaintiffs may not have the resources or incentive to pursue his or her claims independently. Moreover, even if plaintiffs did bring individual lawsuits, litigating thousands of individual wage and hour claims alleged to have arisen out of the same alleged corporate policy or practice would place an onerous and unnecessary burden on this Court. The superiority requirement is, therefore, met. Accordingly, the Court respectfully recommends provisional class certification for purposes of settlement.

## II.  Provisional Certification of the Settlement Collective

Plaintiffs seek to certify a FLSA collective action settlement class on a provisional basis for settlement purposes. Br. in Supp. at 14-15. The typical FLSA certification process occurs in two stages: a preliminary certification (the type of certification at issue here), and a final certification.[6] <u>Singleton</u>

---

[6] "[C]onditional certification' is not really certification, since it involves the court using its discretionary power . . . to facilitate the sending of notice to potential [collective] members." <u>Freeman v. Sam's E. Inc.</u>, No. CV 2:17-1786, 2018 WL 5839857, at *2 (D.N.J. Nov. 8, 2018) (citing <u>Zavala v. Wal-Mart Stores, Inc.</u>, 691 F.3d 527, 536 (3d Cir. 2012) (internal quotations omitted)).

v. First Student Mgmt. LLC, No. CIV.A. 13-1744, 2014 WL 3865853, at *3 (D.N.J. Aug. 6, 2014) (citing Zavala v. Wal-Mart Stores, Inc., 691 F.3d 527, 535-37 (3d Cir. 2012). At the preliminary certification stage, Courts apply a "fairly lenient standard" to determine whether the employees enumerated in the named plaintiff's complaint are "similarly situated."[7] Freeman v. Sam's E. Inc., No. CV 2:17-1786, 2018 WL 5839857, at *2 (D.N.J. Nov. 8, 2018) (citing Zavala, 691 F.3d at 536 & n.4). "The named plaintiff need only make a modest factual showing — something beyond mere speculation — to demonstrate a factual nexus between the manner in which the employer's alleged policy affected him or her and the manner in which it affected the proposed collective action members." Id. (quoting Halle v. W. Penn Allegheny Health Sys. Inc., 842 F.3d 215, 224 (3d Cir. 2016)(internal quotations omitted)); see also Reinig, 912 F.3d at 123 n. 1. "Being similarly situated does not mean simply sharing a common status[.]" Zavala, 691 F.3d at 538 (3d Cir. 2012). "Rather, it means that one is subjected to some common employer practice that, if proved, would help demonstrate a violation of the FLSA." Id.

---

[7] "[W]hereas a class action ruling is grounded in the various procedural provisions found in Rule 23, a collective action under the FLSA hinges on 'whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs.'" Reinig v. RBS Citizens, N.A., 912 F.3d 115, 132 (3d Cir. 2018) (citing Zavala v. Wal-Mart Stores, Inc., 691 F.3d 527, 537 (3d Cir. 2012)).

Named Plaintiff alleges that Fulton improperly compensated Named Plaintiff and other similar non-exempt employees presently and formerly employed by Fulton and subject to Fulton's same pay practices. Compl. at ¶¶ 10 - 11. Applying the "fairly lenient standard" for evaluating preliminary approval of a settlement collective, the Court is satisfied that the Settlement Collective Members are similarly situated to Named Plaintiff for substantially the same reasons the Court found the Rule 23(a) and (b) requirements were met.[8] Indeed, the Settlement Collective Members and Named Plaintiff advance similar claims, seek substantially the same form of relief, and appear to have similar hourly compensation structures. Although the actual rate of pay may differ by employee, such minute differences do not, by themselves, vitiate the collective action. As one court has observed, "[i]f one zooms in close enough on anything, differences will abound." Frank v. Gold'n Plump Poultry, Inc., No. 04-CV-1018, 2007 WL 2780504, at *5 (D.Minn. Sep. 24, 2007). Accordingly, the Court respectfully recommends provisional certification of the settlement collective for purposes of settlement.

### III. Preliminary Approval of the Proposed Settlement Under Rule 23

---

[8] See Hall v. Best Buy Co., 274 F.R.D. 154, 167 & n. 68 (E.D. Pa. 2011) (finding collective action may be certified when the more stringent requirements for certifying a class action for the purposes of settlement under Rule 23(a) and (b)(3) are met).

Settlement of a class action requires the district court's approval. Fed. R. Civ. P. 23(e). Review of a proposed class settlement occurs in two stages. The first stage is a "preliminary fairness evaluation." In re National Football League Players' Concussion Injury Litig., 961 F. Supp. 2d 708, 714 (E.D. Pa. 2014). If the proposed settlement is preliminarily acceptable, the court then directs that notice be provided to all class members who would be bound by the proposed settlement to afford them an opportunity to be heard on, object to, and opt out of the settlement. Id.

A court's preliminary approval is not binding and is granted unless the proposed settlement is obviously deficient. Jones v. Commerce Bancorp, Inc., No. 05-5600, 2007 WL 2085357, at *2 (D.N.J.2007); Weissman v. Philip C. Gutworth, P.A., 2015 WL 333465, at *2 (D.N.J. Jan. 23, 2015). In making its preliminary evaluation, the court generally considers whether "(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." Gen. Motors Corp., 55 F.3d at 785. These factors create an "initial presumption of fairness." Id.; see Ehrheart v. Verizon Wireless, 609 F.3d 590, 592 (3d Cir. 2010) ("[u]nder Fed. R. Civ. P. 23(e), a district court's primary role is to determine whether the settlement is fundamentally fair, reasonable and adequate."). To aid in this Court's evaluation of fairness with regard to the

22

Proposed Settlement, the Third Circuit in <u>Girsh v. Jepson</u>, 521 F.2d 153, 157 (3d Cir. 1975), established nine factors for consideration ("the Girsh factors").[9]

> ... (1) the complexity, expense and likely duration of the litigation ...; (2) the reaction of the class to the settlement ...; (3) the stage of the proceedings and the amount of discovery completed ...; (4) the risks of establishing liability ...; (5) the risks of establishing damages ...; (6) the risks of maintaining the class action through the trial ...; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery ...; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation ....

<u>Girsh</u>, 521 F.2d at 157 (alterations in original) (citation and internal quotation marks omitted).

The Court finds that these factors weigh in favor of approving the proposed settlement as fair and reasonable.

---

[9] "In a case such as this one, where settlement negotiations preceded class certification and settlement approval is sought simultaneously with class certification, this Court must be even 'more scrupulous than usual' in its examination of the fairness of the settlement." <u>Lenahan v. Sears, Roebuck & Co.</u>, No. CIV. 02-0045, 2006 WL 2085282, at *11 (D.N.J. July 24, 2006), aff'd, 266 F. App'x 114 (3d Cir. 2008) (quoting <u>In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liability Litig.</u>, 55 F.3d 768, 805 (3d Cir. 1995). "While the issue of final settlement approval is not presently before the Court, it is important to consider the final approval factors during this stage so as to identify any potential issues that could impede the offer's completion." <u>Singleton v. First Student Mgmt. LLC</u>, No. CIV.A. 13-1744, 2014 WL 3865853, at *5 (D.N.J. Aug. 6, 2014).

First, if this action were to continue, the parties would likely expend considerable time and money pursuing their claims, "with both sides spending an exorbitant amount of time and resources on discovery, motion practice, and experts." Br. in Supp. at 2. This litigation presents significant contested questions of fact. With Fulton having consistently denied, and continuing to deny, all allegations of wrongdoing, resolution of these claims through trial would be a costly and protracted process. Further, this litigation involves claims that arise under both state and federal statutes. "While the differences in substantive law are not unmanageable . . . it would undoubtedly make the process of litigation complex." Bredbenner v. Liberty Travel, Inc., No. CIV.A. 09-1248 MF, 2011 WL 1344745, at *11 (D.N.J. Apr. 8, 2011). By reaching a settlement prior to the time for dispositive motions, "the parties may gain significantly from avoiding the costs and risks of a lengthy and complex trial." Ehrheart v. Verizon Wireless, 609 F.3d 590, 595 (3d Cir. 2010). Since continued litigation would be time-consuming and expensive considering the nature of the alleged claims and the contested questions of fact, this factor weighs in favor of preliminary approval.

Second, at the preliminary review stage, the actual reaction of the proposed class remains unknown.

Turning to the third factor, plaintiff submits that the parties have already dedicated substantial time and resources to this litigation. Br. in Supp. at 1. Specifically, Fulton produced a substantial sample of branch employees' time and pay records, written policies regarding its opening procedures and time keeping systems, and Named Plaintiff's and Opt-in Plaintiff Stephens' pay, time records. Id. at 2-3. Named Plaintiff and Opt-in Plaintiff Stephens provided information regarding their experience performing opening procedures and documents related to when they performed same. Id. Br. at 2-3. Armed with this discovery, counsel then engaged in settlement negotiations supervised by Judge Schneider over a period of several months before reaching an agreement. The development of these proceedings therefore weighs in favor of approval.

The fourth, fifth, and sixth Girsh factors consider the risks of establishing liability, damages, and maintaining the class action through the trial, and may appropriately be analyzed together for purposes of preliminary approval. The Court notes several potential risks in pursuing litigation, including: (1) the possible difficulty in demonstrating liability for Fulton's alleged failure to pay employees for compensable time; (2) the difficulty in establishing exact damages figures for any unpaid working time, which may be complicated by the varying amounts of time it took individual plaintiffs to accomplish individual tasks,

25

or distinguishing any de minimis uncompensated time from valid, compensable tasks; and (3) the inherent risks in maintaining a class exceeding 2,000 individuals through trial concerning off-the-clock wage claims. The Court further notes that the immediate cash payout provided by the proposed settlement offers a substantial benefit over the risks and costs plaintiffs would face in litigating their claims to a conclusion. Accordingly, these factor weighs in favor of preliminarily approving the proposed settlement.

Seventh, Fulton's ability to withstand a greater judgment is unknown. The parties do not provide information concerning this inquiry. While the Court is confident that a corporation the size of Fulton could survive a greater judgment, Fulton's ability in this regard, standing alone, does not suggest the proposed settlement is unfair or unreasonable. See In re Cendant Corp. Sec. Litig., 109 F.Supp.2d 235, 263 (D.N.J. 2000); see also Weiss v. Mercedes-Benz, 899 F.Supp. 1297, 1302 (D.N.J.1995) (finding that Mercedes could withstand higher judgment but approving settlement); In re Medical X-Ray Film Antitrust Litig., No. 93-5904, 1998 WL 661515, at *5 (E.D.N.Y. Aug. 7, 1998) (approving settlement despite lack of evidence on defendant's ability to withstand higher judgment). The omission of this information therefore does not strongly weigh against preliminary approval.

The final two _Girsh_ factors concern the range of reasonableness of the proposed settlement. The Third Circuit has explained that "in cases primarily seeking monetary relief," district courts should compare "the present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing . . . with the amount of the proposed settlement." _Gen. Motors Corp._, 55 F.3d at 806 (quoting Manual for Complex Litigation (Second) § 30.44, at 252 (1985)) (internal quotations omitted); _Prudential_, 148 F.3d at 322. "This figure should generate a range of reasonableness (based on size of the proposed award and the uncertainty inherent in these estimates) within which a district court approving (or rejecting) a settlement will not be set aside." _Gen. Motors Corp._, 55 F.3d at 806 (citing _Newman v. Stein_, 464 F.2d 689, 693 (2d Cir. 1972)). While precise value determinations are not required (see _Warfarin_, 391 F.3d at 538), the parties here have not provided a full calculation of recoverable damages for the Court's consideration. The proposed settlement provides that each Settlement Participant shall recover a flat sum of $125 plus a _pro_ _rata_ share of the Residual Net Settlement Amount, however, it is not fully clear what the average Settlement Participant might expect to recover at the high end of the range of recoverable damages. The Court recognizes that settlement may be appropriate even where the settlement is only a fraction of the ultimate total exposure should

the case be decided at trial. See Lenahan v. Sears, Roebuck & Co., No. CIV. 02-0045, 2006 WL 2085282, at *16 (D.N.J. July 24, 2006), aff'd, 266 F. App'x 114 (3d Cir. 2008) (approving a $15 million settlement when maximum exposure at trial may have been as high as $104 million because of the uncertainty of the final disposition of a trial); Mehling v. New York Life Ins. Co., 248 F.R.D. 455, 462 (E.D. Pa. 2008) (finding a settlement amount reasonable that represented approximately 20% of the best possible recovery if all theories of recovery and damages were accepted by the Court); In re Corel Corp. Inc. Sec. Litig., 293 F. Supp. 2d 484, 490 (E.D. Pa. 2003) (concluding "[a] settlement amounting to 15% of maximum provable damages is within the range of settlement agreements approved by other courts in this District."); Cullen v. Whitman Med. Corp., 197 F.R.D. 136, 144 (E.D. Pa. 2000) (granting final approval where "[t]he settlement that was achieved represents approximately seventeen percent of single damages to the class, an amount significantly higher than the proportion of damages obtained in settlement agreements approved by other courts"). Although the Court is without sufficient information to make a value assessment at this moment, this does not amount to an "obvious deficiency" warranting preclusion of preliminary approval for notice purposes. The Court stresses that approval of the proposed Settlement is only preliminary, and any questions

concerning the adequacy of support for particular provisions of the Settlement should be addressed at the final fairness hearing.

The Court's analysis under the Girsh factors weigh in favor of preliminarily approving the proposed settlement agreement under Rule 23.

**IV.  Approval of the Proposed Settlement Under the FLSA**

District courts in this jurisdiction abide by the principle that settlement of FLSA claims under 29 U.S.C. § 216(b) requires court approval. Fritz v. Terminite, Inc., No. CV 19-15749, 2020 WL 5015508, at *1 (D.N.J. Aug. 25, 2020) (citing Jones v. SCO, Silver Care Operations LLC, No. 13-7910, 2019 WL 2022371, at *1 (D.N.J. May 8, 2019)); see also Bettger v. Crossmark, Inc., No. 13-2030, 2015 WL 279754, at * 3 (M.D. Pa. Jan. 22, 2015). "Although the Third Circuit has not adopted a standard for evaluating the settlement of a FLSA action, district courts within the Third Circuit have followed the guidance set forth by the Eleventh Circuit" in Lynn's Food Stores, Inc. v. U.S. ex rel. U.S. Dep't of Labor, 679 F.2d 1350 (11th Cir. 1982). Fritz, 2020 WL 5015508, at *1; see also Bettger, 2015 WL 279754 at *3 ("In the absence of guidance from the Third Circuit, courts have routinely employed the considerations set forth by the Eleventh Circuit in Lynn's Food Stores, 679 F.2d 1350, to evaluate proposed settlement agreements."). The standard set forth in Lynn's Food Stores

requires that, in order to approve a settlement under FLSA § 216(b), a district court must determine that (1) the matter concerns a _bona fide_ dispute and (2) the settlement is a "fair and reasonable resolution" of the FLSA claims. Lynn's Food Stores, 679 F.2d at 1355; see also Cruz v. JMC Holdings, Ltd., No. 16-9321, 2019 WL 4745284, at *3 and n.3 (D.N.J. Sept. 30, 2019) (applying the standard articulated by Lynn's Food Stores to evaluate a proposed FLSA settlement agreement).

### a. Bona Fide Dispute

"A _bona fide_ dispute exists when parties genuinely disagree about the merits of an FLSA claim—when there is factual rather than legal doubt about whether the plaintiff would succeed at trial." Haley v. Bell-Mark Techs. Corp., No. 17-1775, 2019 WL 1925116, at *4 (M.D. Pa. Apr. 30, 2019)(citing Lynn's Food Stores, 679 F.2d at 1354; Kraus v. PA Fit II, LLC, 155 F. Supp. 3d 516, 530 (E.D. Pa. 2016); Deitz v. Budget Renovations & Roofing, Inc., No. 4:12-CV-0718, 2013 WL 2338496, at *3 (M.D. Pa. May 29, 2013)).

Plaintiff maintains that Fulton unlawfully failed to pay overtime wages for time spent performing branch opening procedures prior to clocking in. By contrast, Fulton has disputed its liability on these claims, asserted numerous substantive and procedural defenses to liability, and maintained that, even assuming its liability, there would be no damages or that damages

30

would be limited. Fulton's defenses include that (1) the opening procedures were not compensable; (2) Fulton's practice was to pay for the time and thus any unpaid time was the result of manager-specific, location-specific, or employee-specific circumstances, not a company-wide unlawful policy or practice; (3) differences in what positions were performed at any given branch would make ascertaining a collective difficult; (4) differences in what positions performed the opening procedures was very short and therefore, damages are low; and (5) Fulton did not violate the law and had a good faith basis for believing its policies were in compliance with the FLSA.[10]

In light of the parties' diametrically opposed factual positions, the Court concludes that a <u>bona fide</u> dispute exists.

### b. Fair and Reasonable

A proposed settlement is fair and reasonable when (1) the compromise is fair and reasonable to the employee; and (2) the compromise does not otherwise frustrate the implementation of the FLSA. <u>See</u> <u>Gabrielyan v. S.O. Rose Apartments LLC</u>, No. 15-1771, 2015 WL 5853924, at *2 (D.N.J. Oct. 5, 2015).

---

[10] The Court gleans this information concerning Fulton's defenses from Named Plaintiff's unopposed Brief in Support of the Motion at 18-19. Fulton did not file an answer in this case, as Judge Schneider stayed this matter on March 5, 2020 [Doc. No. 8], after which point the parties reached the settlement that is the subject of this Report and Recommendation.

While factors for evaluating "fairness" of a settlement in an FLSA collective action have not been definitively prescribed by the Third Circuit, district courts in the Third Circuit have utilized the same Girsh factors established for approving Rule 23 class action settlements. Brumley v. Camin Cargo Control, Inc., No. CIV.A. 08-1798 JLL, 2012 WL 1019337, at *4 (D.N.J. Mar. 26, 2012). Applying the Girsh factors, the Court is satisfied that the proposed settlement under the FLSA is fair and reasonable for substantially the same reasons discussed in Section V, supra.[11]

The Court is also satisfied that the compromise is fair and reasonable as there is no indication that it would impermissibly frustrate the implementation of the FLSA. Upon review of the Proposed Settlement Agreement, the Court specifically finds it does not release unrelated claims against Fulton,[12] it does not limit claims accruing beyond the proposed settlement's effective

---

[11] See Singleton v. First Student Mgmt. LLC, No. CIV.A. 13-1744, 2014 WL 3865853, at *8 (D.N.J. Aug. 6, 2014) (concluding proposed settlement was reasonable for FLSA approval purposes upon incorporating by reference analysis of Girsh factors applied to class action under Rule 23 in same opinion).

[12] Generally, courts find that all-encompassing release provisions that preclude plaintiffs from raising unrelated claims against their employer are too broad and frustrate FLSA's purpose. See, e.g., Solkoff v. Pennsylvania State Univ., 435 F. Supp. 3d 646, 660 (E.D. Pa. 2020) ("The broad release of claims that includes unrelated claims and claims unknown to the plaintiff frustrates the purpose of the FLSA . . . ").

date, and it does not contain an overly-broad confidentiality provision.[13]

Accordingly, the Court finds that the Proposed Settlement Agreement is fair and reasonable.

## V.    Class Counsel's Fees and Costs

Class counsel intends to request an award of attorneys' fees and reimbursement of expenses under a percentage-of-recovery approach in the amount of thirty-three and one-third percent (33 1/3%) of the settlement fund, totaling $333,333. Br. in Supp. at 22-23.

Under Third Circuit law, a Court may evaluate the award of attorneys' fees through two established methods: (1) the lodestar approach, and (2) the percentage-of-recovery approach. In re Diet Drugs Product Liability Litig., 582 F.3d 524, 540 (3d Cir. 2009); In re AT & T Corp., 455 F.3d 160, 164 (3d Cir. 2006).[14] "The

---

[13] See generally Caddick v. Tasty Baking Co., No. 2:19-CV-02106, 2021 WL 1374607, at *8 (E.D. Pa. Apr. 12, 2021) (finding a confidentiality agreement too broad where it prohibited plaintiffs from publicizing or disclosing the specific monetary amounts each individual was to receive under the settlement, either directly or indirectly, to any media, the public generally, or any individual or entity, specifically because the reference to "any individual or entity" extended to those that the settlement covered).

[14] In FLSA cases, both the lodestar formula and the percentage-of-recovery method have been used in evaluating the reasonableness of attorneys' fees. Compare Loughner v. Univ. of Pittsburgh, 260 F.3d 173, 177 (3d Cir.2011) (using lodestar formula), with, Brumley v. Camin Cargo Control, Inc., No. CIV.A. 08-1798 JLL, 2012 WL 1019337,

percentage-of-recovery method" is "the prevailing methodology used by courts in this Circuit for wage-and-hour cases. <u>Bredbenner</u>, No. CIV.A. 09-1248 at *19 (hybrid FLSA/Rule 23 wage and hour case approving proposed settlement agreement and awarding attorneys' fees requested under a percentage-of-recovery arrangement); <u>see</u>, <u>e.g.</u>, <u>Brumley v. Camin Cargo Control, Inc.</u>, No. CIV.A. 08-1798, 2012 WL 1019337, at *9 (D.N.J. Mar. 26, 2012); <u>Chemi v. Champion Mortg.</u>, No. 2:05-CV-1238, 2009 WL 1470429, at *11 (D.N.J. May 26, 2009). "The percentage-of-the-fund method of awarding attorney fees in class actions should approximate the fee that would be negotiated if the lawyer were offering the services in the private marketplace." <u>In re Ins. Brokerage Antitrust Litig.</u>, 282 F.R.D. 92, 123 (D.N.J. 2012) (citing <u>In re Remeron Direct Purchaser Antitrust Litig.</u>, No. CIV.03-0085, 2005 WL 3008808, at *16 (D.N.J. Nov. 9, 2005). "In determining the market price for such services, evidence of negotiated fee arrangements in comparable litigation should be examined." <u>Id.</u> (citing <u>In re Continental Illinois Sec. Litig.</u>, 962 F.2d 566, 572 (7th Cir. 1992).

Counsel's request for one-third of the settlement fund falls within the range of reasonable allocations in the context of awards granted in other, similar cases. <u>See</u>, <u>e.g.</u>, <u>Bredbenner</u>, No. CIV.A. 09-1248 (approving award of 32.6% of the settlement fund in case

---

at *9 (D.N.J. Mar. 26, 2012) (using percentage-of-recovery method).

involving claims brought under the FLSA and state labor laws); Gilliam v. Addicts Rehab. Ctr. Fund, No. 05 CIV. 3452, 2008 WL 782596 (S.D.N.Y. Mar. 24, 2008) (awarding class counsel one-third of the settlement fund in case involving claims brought under the FLSA and the New York Labor Law); deMunecas v. Bold Food, LLC, No. 09 CIV. 00440, 2010 WL 3322580 (S.D.N.Y. Aug. 23, 2010) (approving award of one-third of $800,000 in matter involving claims brought under the FLSA and the New York Labor Law); Rotuna v. W. Customer Mgmt. Grp., LLC, No. 4:09CV1608, 2010 WL 2490989 (N.D. Ohio June 15, 2010) (approving award of one-third of the settlement payment in case involving allegations that employees performed unpaid work before clocking in each day in violation of the FLSA and Ohio Minimum Fair Wage Standards Act).

In view of the foregoing, and in consideration of counsel's representation that the request for attorneys' fees will be further substantiated prior to a final settlement hearing and after objections are made, the Court can make a preliminary determination that the fee request is fair and reasonable.

## VI.  Service Payments

The purpose of service payments is to compensate named plaintiffs for "the services they provided and the risks they incurred during the course of class action litigation," Bredbenner, No. CIV.A. 09-1248, at *22 (D.N.J. Apr. 8, 2011).

Here, counsel seeks service payments in the amounts of up to $5,000 for Named Plaintiff and $500 for Moneta Stephens, who joined in the action as an opt-in plaintiff before settlement. Both plaintiffs assisted in the investigation and evaluation of the claims and provided discovery prior to settlement negotiations. The Court finds these payments to be reasonable in consideration of the time, effort, and risk involved here. See Chemi, No. 2:05-CV-1238 at *1 (awarding Named Plaintiff $5,000 where settlement amount was $1.2 million).

## VII. Proposed Form of Notice and the Parties' Notice Plan/Approval of Notice

Rule 23(e) requires that notice of a proposed settlement be sent to class members. Fed. R. Civ. P. 23(e). For classes certified under 23(b)(3), members must be provided with "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Due process requires that notice be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950). The notice must "clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv)

36

that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B).

Additionally, upon conditional certification of a FLSA collective action, a court has discretion to provide court-facilitated notice to potentially eligible members of the collective action.[15] Colosimo v. Flagship Resort Dev. Corp., No. CV 17-3969, 2019 WL 1349755, at *2 (D.N.J. Mar. 26, 2019) (citing Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 170, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989). Such notice ensures that the employees receive "accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether the participate." Id. The notice also "serves the legitimate goal of avoiding a multiplicity of duplicative suits

---

[15] "The 'conditional certification' is not really a certification." Zavala v. Wal Mart Stores Inc., 691 F.3d 527, 536 (3d Cir. 2012). "It is actually the district court's exercise of [its] discretionary power, upheld in Hoffmann-La Roche [Inc. v. Sperling, 493 U.S. 165, 110 S. Ct. 482, 107 L.Ed.2d 480 (1989)], to facilitate the sending of notice to potential class members[.]'" Id. (quoting Symczyk v. Genesis HealthCare Corp., 656 F.3d 189 (3d Cir. 2011)(internal quotations omitted)).

and setting cut off dates to expedite the disposition of the action." Id. at 172.

The Court finds that the proposed notice forms satisfy due process standards and Rule 23. The proposed notices provide information about the nature of the action and the claims at issue as well as settlement terms (including the formula used to calculate each Settlement Collective Member's and Class Member's Settlement Payment). The notices further set forth class counsel's intent to request attorneys' fees, reimbursement of expenses, service payments for Named Plaintiff and Opt-in Plaintiff Stephens, the amount that will be sought for these fees and service payments, and information regarding the claims being released. Additionally, the notices offer information about the date for the fairness hearing, Settlement Class Members' right to object and opt-out, and the procedure to receive additional information. The notices also provide Settlement Collective Members and Settlement Class Members with contact information for the claims administrator and counsel.[16]

---

[16]   The Court specifically notes that the Notice of Settlement of FLSA Collective and Class Action Lawsuit provides the address and telephone number for proposed class counsel and that the contact information for the Administrator is "listed herein." There is also a section to be filled in listing contact information for the Administrator. See Doc. No.31-3 at 37.  In issuing this Report and Recommendation, it is the Court's understanding that the Administrator's contact information will be provided as a part of the notice to each settlement

## VIII.   Appointment of Settlement Administrator

Plaintiff seeks the appointment of Epiq Class Action & Claims Solutions, Inc. ("Epiq") as the administrator of the proposed settlement. On the record before it, the Court has identified no obvious conflict or other basis to deny appointment. The Court notes that several recent class actions from this District where Epiq was deemed suitable by the Court to serve as settlement administrator. E.g., Fernandez v. Knight Cap. Grp., Inc., No. 12CV06760MCALDW, 2016 WL 7468089, at *1 (D.N.J. June 16, 2016); In re Caterpillar, Inc., No. 14-3722, 2016 WL 7130935, at *3 (D.N.J. May 25, 2016); In re Ocean Power Techs., Inc., Sec. Litig., No. 14-3799, 2016 WL 7638464, at *2 (D.N.J. June 7, 2016). With regard to payment, Epiq seeks an estimated $109,878 for costs associated with mailed notice (including postage), undeliverable mail processing, address research, claims administration (claims processing, website/phone support, and associated project management time) and distribution related expenses (checks and associated postage). See Declaration of Peter Sperry (Sperry Decl.) ¶ 4 [Doc. No. 31-3]. "There is no special test for determining whether or not this amount of money is fair and reasonable." Haas v. Burlington Cty., No. CV 08-1102, 2019 WL 413530, at *11 (D.N.J. Jan. 31, 2019). The amount estimated by

---

collective member and settlement class member. Id. at Exhibits B and C, pp. 34-45.

Epiq does not strike the Court as being so unreasonable as to warrant denial of appointment at this preliminary stage, particularly given that there will be occasion to examine this issue more closely prior to final approval. Accordingly, the Court respectfully recommends the appointment of Epiq to serve as the administrator of the proposed settlement.

## Conclusion

For the reasons set forth herein, it is respectfully recommended that the Court (1) grant Preliminary Approval of the Settlement Agreement and Release; (2) provisionally certify the Settlement Collective under Section 216(b) of the Fair Labor Standards Act for the purposes of effectuating the settlement; (3) provisionally certify the Settlement Class under Federal Rule of Civil Procedure 23(a) and 23(b)(3) for purposes of effectuating the settlement; (4) appoint Swartz Swidler, LLC as Class Counsel; (5) appoint Named Plaintiff Kress as Class Representative; (6) appoint Epiq as the Administrator of the settlement; (7) approve the proposed Notices of Settlement and Claim Form and directing their distribution in accordance with the Settlement Agreement; (8) approve the language of Claim Form and Check Opt-In Form as sufficient under 29 U.S.C. § 216(b) to constitute consent to join the lawsuit for settlement purposes only and to release the

Released Claims; and (9) schedule a Final Settlement Fairness

Hearing.

                              s/ Matthew J. Skahill
                              MATTHEW J. SKAHILL
                              United States Magistrate Judge


Cc: Honorable C. Darnell Jones, II
    Senior United States District Judge

At: Camden, New Jersey