[ECF No. 51]

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

| | |
|---|---|
| D. KRESS, *individually and on behalf of all those similarly situated,*<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>FULTON BANK, N.A.<br><br>　　　　　　Defendant. | Civil No. 19-18985 (CDJ/MJS)<br><br>ORDER GRANTING FINAL APPROVAL OF SETTLEMENT AGREEMENT |

　　On November 2, 2022, the Court heard an unopposed Motion for Final Approval of Class and Collective Settlement, Attorneys' Fees and Costs, Service Awards, and Settlement Administration Fees ("Motion") [ECF No. 51] by Named Plaintiff D. Kress and Opt-In Plaintiff Moneta Stephens, on behalf of themselves and all others similarly situated, and Defendant Fulton Bank, N.A. ("Defendant") (together, the "Parties"). The Court has considered the Parties' submissions [ECF No. 51] and the arguments provided by counsel at the Fairness Hearing on Final Approval. For the reasons as stated on the record, the Court finds as follows:

　　1.　The Parties have participated in settlement

1

negotiations with the assistance of Magistrate Judge Joel Schneider, now retired, and executed a proposed Settlement Agreement ("Settlement" or "Agreement") that was filed with the Court on February 11, 2021. ECF No. 31. Pursuant to the Agreement, Named Plaintiff moved for entry of an order granting preliminary approval of the Settlement and provisional certification of the class ("Preliminary Approval Order"). Id. That Motion was referred to this Court for a Report and Recommendation ("R&R") by Judge Jones of the U.S. District Court for the Eastern District of Pennsylvania on May 12, 2021. ECF No. 37. This Court issued its R&R on September 17, 2021. ECF No. 43. The Parties then consented to Magistrate Judge authority for all settlement-related proceedings [ECF No. 46] and the Court granted the Preliminary Approval Order on June 30, 2022 [ECF No. 50].[1]

2. Named Plaintiff filed the current Motion on October 19, 2022. ECF No. 51.

3. The Court hereby incorporates the terms of the Agreement and the Preliminary Approval Order for the purposes of this Final Approval Order, and unless otherwise defined herein, all terms used in this Order will have the same meaning

---

[1] The Preliminary Approval Order was previously filed at ECF No. 48, but the Final Approval Hearing was adjourned, resulting in the filing of the amended order at ECF No. 50.

2

as defined in the Settlement Agreement.

4. Pursuant to Fed. R. Civ. P. 23(a) and (b)(3), the Court defines, for settlement purposes only, the Settlement Class as:

> all current and former employees who are designated as full-time in Defendant's Human Resources system known as Ultipro ("Full-Time Employees") and who have worked for Fulton Bank, N.A. in New Jersey, or Fulton Bank of New Jersey, at any time from August 9, 2017 through September 1, 2020 (the "Relevant Period") in a retail banking branch in one or more of the following hourly-paid positions, including those with a designation of senior, floating, or bilingual: teller, teller supervisor/head teller, customer service representative, customer service representative supervisor, assistant branch manager, financial center supervisor, universal banker, or sales and service specialist (the "Covered Positions").

5. The Court finds that the Settlement Class satisfies the requirements of Fed. R. Civ. P. 23(a) and is maintainable under Rule 23(b)(3) for purposes of settlement of this litigation only. In so finding, the Court does not determine whether the certification of the class would remain proper under the more stringent standard that requires a showing of, *inter alia*, manageability.

6. Pursuant to 29 U.S.C. § 216(b), the Court certifies, for settlement purposes only, the Settlement Collective, which includes:

> all current and former Full-Time Employees who have worked for Fulton Bank, N.A. or any bank which merged into Fulton Bank, N.A., at any time during the Relevant Period in a retail banking branch in one or more Covered Positions.

7. The Court finds that the notices to government officials of this Settlement have been transmitted as required under the Class Action Fairness Act, 28 U.S.C. § 1711, et seq. See 28 U.S.C. § 1715(b) ("Not later than 10 days after a proposed settlement of a class action is filed in court, each defendant that is participating in the proposed settlement shall serve upon the appropriate State official of each State in which a class member resides and the appropriate Federal official, a notice of the proposed settlement . . . ."); see also Maddy v. Gen. Elec. Co., Civ. No. 14-490, 2017 WL 2780741, at *8 (D.N.J. June 26, 2017)(noting the administrator in a FLSA settlement made the required notices to government officials under 28 U.S.C. §§ 1715(a) and (b)).

8. Pursuant to Fed. R. Civ. P. 23(e)(2) and Girsh v. Jepson, 521 F.2d 153 (3d Cir. 1975) (enumerating factors for courts to consider when approving a settlement agreement), the Court finds that the Settlement memorialized in the Agreement and filed with the Court, is fair, reasonable, and adequate, and in the best interests of the Settlement Participants. The Court finds that: (a) the strength of the Named Plaintiff's and Settlement Participants' claims, weighed against the complexity, duration, and expense of further litigation supports approval of the Settlement; (b) the reaction of the Class supports approval of the Settlement because it has been positive, which

4

is evident in only three of the 2,044 Settlement Collective Members and 500 Settlement Class Members opting out of the Settlement, and none objecting to it; (c) the progression of the litigation to a stage where the Court and the parties could sufficiently evaluate the merits of the case, potential damages, and the probable course of future litigation supports approval of the Settlement; (d) the substantial risks Named Plaintiff faces to establishing Defendant's liability supports approval of the Settlement because there remain significant disputes over whether Defendant willfully maintained the alleged policy, whether the employment tasks for which Named Plaintiff alleges Defendant did not pay the Class Members are compensable tasks under the Fair Labor Standards Act ("FLSA"), and whether the tasks, if found to be compensable, are *de minimis*; (e) the considerable risk of whether Named Plaintiff can establish damages supports approval of the Settlement; (f) the risk that Named Plaintiff will not maintain the class action through trial supports approval of the Settlement; (g) the Maximum Settlement Amount of $1,000,000 supports approval of the Settlement because it is a fair, reasonable, and adequate settlement of the Named Plaintiff's individual claims and the claims of the Settlement Class and Collective; and (h) the arm's-length negotiations between the parties, which led to the Settlement, support

5

approval of the Settlement.[2]

9. Based on all these factors, the Court finds that the Agreement has no obvious defects, is within the range of settlement approval, and so grants final approval of the Agreement.

10. For the same reasons the Court finds the Settlement Agreement is fair, reasonable, and adequate under Fed. R. Civ. P. 23(e)(2), the Court likewise finds that the resolution of the FLSA claims represents a fair and reasonable resolution of a *bona fide* dispute.

11. The Court finds reasonable the Service Awards for Named Plaintiff and Opt-In Plaintiff, totaling $5,500.00, in recognition of the services they rendered on behalf of the Settlement Participants. Specifically, the Court awards $5,000 to Named Plaintiff and $500.00 to Opt-In Plaintiff. These amounts shall be paid from the Maximum Settlement Amount.

12. The attorneys at Swartz Swidler, LLC. who prosecuted this case are experienced class action employment lawyers with good reputations among the employment law bar. The Court grants Class Counsel's request for $333,333.33 in attorneys' fees, which is one-third of the Maximum Settlement Amount, plus

---

[2] Defendant's ability to withstand a greater judgment was not a factor in settlement negotiations, and therefore does not weigh for nor against settlement in this matter.

$400.00 in costs and expenses reasonably expended litigating and resolving the lawsuit. These expenses and fees are fair and reasonable and adequately reflect both the risk counsel took in pursuing the case and a fair market value for the services provided. This conclusion is supported by the tangible benefits conferred on the class as a result of the legal services provided by Class Counsel, the complex nature of the litigation, the substantial risks involved, the quality of work performed, and the efficient manner in which this litigation was resolved. These amounts shall be paid from the Maximum Settlement Amount.

13. The Court appointed Epiq as the Administrator to, among other things, provide notice to the Settlement Class and Collective and administer the Settlement pursuant to the terms of the Agreement.

14. The Court finds reasonable $117,922.41 as the Settlement Administration Amount for Epiq, in recognition of Epiq's services related to administering the Settlement. This Amount shall be paid from the Maximum Settlement Amount. At the Final Approval Hearing, the Parties, upon further inquiry from the Court, consented to cap Epiq's fees and expenses at this Amount, as it reflects the fees and expenses Epiq has incurred to date ($64,922.41) plus the lower figure of Epiq's estimated range of additional fees and expenses it might incur to complete

7

administration of the settlement ($53,000.00).[3]

15. Class Members shall receive their settlement shares according to the allocation formula and procedures set forth in the Agreement.

16. The Court approves Legal Services of New Jersey as the *cy pres* recipient.

17. The Court dismisses this case with prejudice, and without costs, expenses or attorneys' fees to any party except as provided in the Agreement and this Order and directs the Clerk of the Court to enter this Final Order and Judgment immediately.

18. The Court retains jurisdiction over the interpretation and implementation of the Agreement, as well as any and all matters arising out of, or related to, the interpretation or implementation of the Agreement and of the settlement contemplated thereby.

19. The parties shall abide by all terms of the Agreement.

IT IS SO ORDERED this **2nd** day of **November 2022.**

---

[3] Epiq certified to this Court that it estimated incurring future fees and expenses ranging from $53,000 to $85,000 to complete its duties under the Agreement. ECF No. 51-5 at 9. This Court originally determined $109,878 was a reasonable Amount for Epiq's fees and expenses in its R&R [ECF No. 43 at 39-40], based on Eqiq's detailed submissions, and now finds that $117,922.41 (calculated using the expenses incurred to date and limiting the projected future expenses to no more than $53,000) is also a reasonable amount, for all of the reasons set forth on the record.

<u>/s/ Matthew J. Skahill</u>  
Hon. Matthew J. Skahill  
U.S. Magistrate Judge